THE PEOPLE *ex rel.* Zephir Boisvert *et al.* Appellants, *vs.*
MYRON MAGRUDER *et al.* Appellees.

*Opinion filed December 15, 1908.*

1. DRAINAGE—*commissioners of highways are to be regarded as owners of land.* Under section 76 of the Farm Drainage act, relating to districts by user, if a portion of the ditch is in the highway and drains not only the adjoining lands but also the highway, the commissioners of highways, in their corporate capacity and as the representatives of the public, which has a perpetual easement in the highway, must be regarded as "owners of land," within the meaning of such section.

2. SAME—*what land may be included in district by user.* Lands which drained into a ditch constructed along a highway by the highway commissioners, both before and after the ditch was deepened by the commissioners with money subscribed by land owners, may be included in a district subsequently organized under section 76 of the Farm Drainage act, although the owners of such lands did not contribute to the subscription fund for deepening the ditch nor take any part in that work.

3. SAME—*omission of lands is not fatal to organization.* The fact that certain lands, the owners of which contributed to the fund for the deepening of a ditch by highway commissioners, were not included in the petition for the organization of a district by user nor in the district as organized, is not fatal to organization.

APPEAL from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding.

This is a petition filed by the People, on the relation of Zephir Boisvert and others, in the circuit court of Kankakee county, for leave to file an information in the nature of a *quo warranto* against Myron Magruder, Joseph Leclair and M. M. Beebe, to require them to show by what authority they hold and exercise the office of drainage commissioners of a certain pretended drainage district known as Bourbonnais Union District No. 5. The relators question the legality of the organization of the district.

In support of the petition the relators filed the affidavits of Zephir Boisvert, Henry Gregoire and Charles Schilling,

in which they aver that in the year 1903 R. W. Wilkinson and others desiring to deepen a certain ditch running west along the south side of a public highway between sections 22 and 27 and between sections 23 and 26 in the town of Bourbonnais, to Soldier creek, entered into an agreement with the commissioners of highways of that town whereby each of them was to pay said commissioners a certain sum of money to defray the expense of cleaning out and deepening said ditch, upon the condition that two sewer pipe culverts extending across the road north and south along the line and north of said ditch should be taken out; that in pursuance of said agreement the ditch was deepened, and that thereafter the banks caved in, and that Wilkinson thereupon set about to have a tile drain put in said ditch, and with that end in view petitioned for the formation of the above mentioned drainage district, under the provisions of section 151 of chapter 42, Hurd's Revised Statutes of 1905, and that the respondents pretended to organize said drainage district and since that time have pretended to be commissioners thereof. Affiants aver that they were not parties to the deepening of said ditch and that the removal of said culverts was detrimental to them; that by removing said culverts the waters which in the natural course of drainage would have flowed north through said culverts were forced to the west in said ditch, thereby causing more water to flow in said ditch adjoining affiants' land; that many persons were taken into said drainage district that were not parties to the original agreement to deepen said ditch, and that many persons who were parties to that agreement were not included in the formation of said district and who still own the lands which they then owned; affiants further state that they are the owners of lands attempted to be taken in and included in the formation of said district, and that an assessment has been levied against their lands and that the same has been returned as delinquent to the county treasurer. Boisvert states further that the only purpose of the

formation of the said district was to put a tile drain in the ditch in the highway, which Wilkinson and others had by mutual agreement in writing deepened and enlarged some three or four years ago; that it was done for the purpose of bringing west along said highway waters which naturally would have flowed towards the north-west over and across lands owned by Wilkinson and his neighbors, into what is known as Soldier creek.

It appears from counter-affidavits filed by respondents, that on December 16, 1906, R. W. Wilkinson filed with the town clerk of the town of Bourbonnais a petition praying for the organization of a drainage district under section 151 of chapter 42, Hurd's Revised Statutes of 1905. This petition was signed by himself alone, and in it he represented that he and certain others owned adjoining lands which required a system of combined drainage, and that he and such other owners, or their grantors, had theretofore by voluntary action constructed open ditches and tile drains which formed a continuous line and branches through and over and across said lands, and that repairs and improvements were needed on the said drains, and that they could not be made by voluntary agreement of the parties. In this petition Wilkinson included lands belonging to relators Zephir Boisvert, Henry Gregoire, Henry Fink, Jerry Marcotte, Lille Brule and Charles Schilling, none of whom were parties to the agreement above referred to for deepening the ditch in 1903. On the other hand, the lands of Louis Savoie, Robert Lambert, Joseph O. Rivard, Simon Longtin and George Gravelin, all of whom were parties to the agreement above referred to, were not included in said petition. The commissioners of highways took the view that the petition of Wilkinson gave them the jurisdiction to organize a district as prayed for, and they organized the district. Their acts after they had effected the organization or purported organization are not questioned in this proceeding.

Affiants, whose affidavits were filed in behalf of respondents, further state that said open ditch had been constructed more than twenty years prior to the organization of said district and had been used continuously as a drain after its construction, and that it was constructed by voluntary action of the highway commissioners of the town of Bourbonnais, and extended from a point a few rods east of the east line of the west half of section 26 west to Soldier creek; that it was constructed for the purpose of conveying surface waters naturally flowing into said road directly to Soldier creek. Affiants admit that there were two sewer pipe culverts across said public highway north of section 26 at the time of and for some time prior to the making of the subscription agreement heretofore mentioned, and that the highway commissioners of the town of Bourbonnais, after said subscription was paid to them, removed and closed up said culverts, and that by so doing they did not injure the lands of anyone. Affiants then aver that each of the relators, after the construction of said ditch in the public highway and before the organization of said drainage district, laid tiles and constructed drains upon their lands and connected them with said ditch; that at and before the time of the said subscription heretofore mentioned it became evident that the ditch needed repairs and improvements so as to more adequately drain the lands now embraced in said district, and that Wilkinson and others wanted the highway commissioners of the town of Bourbonnais to clean out and deepen said open ditch at the expense of the town; that the commissioners decided that they would deepen said ditch provided they could get enough subscriptions to justify them in so doing, and that it was under these circumstances that the said subscription agreement was made; that the lands of certain persons who subscribed to said agreement did not naturally drain into said ditch nor was their land involved in the same system of combined drainage as the lands in the said drainage district, and that said persons

subscribed to said agreement only upon the condition that said culverts would be removed.

The court, upon a hearing, entered an order denying the petition for leave to file, and from that order the relators have prosecuted an appeal to this court. It is contended by them that the leave should have been granted.

J. BERT. MILLER, State's Attorney, (A. L. GRANGER, of counsel,) for appellants.

SAVARY & RUEL, and EBEN B. GOWER, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The conclusion of the judge of the circuit court was that the drainage district in question was legally organized under the provisions of section 151 of chapter 42, Hurd's Revised Statutes of 1905, which reads as follows: "Where two or more parties owning adjoining lands which require a system of combined drainage, have by voluntary action constructed ditches which form a continuous line, or line and branches, the several parties shall be liable for their just proportion of such repairs and improvements as may be needed therefor, the amount to be determined as near as may be on the same principle as if these ditches were in an organized district. Whenever such repairs and improvements are not made by voluntary agreement, any one or more owning parts of such ditch shall be competent to petition for the formation of a drainage district to include the lands interested in maintaining these ditches. The petitioner or petitioners for the formation of such district must show to the satisfaction of the court that his or their land is damaged through the lack of proper repairs or improvements to said ditch or drain. The form of procedure and the conditions heretofore prescribed in this act shall be observed as near as practicable; but the ditches shall be taken as a dedication of the right of way, and their construction

and joining as the consent of the several parties to be united in a drainage district. These ditches, if open, shall be made tile drains when practicable."

It is first objected to the validity of the organization that the section set out does not authorize the formation of a drainage district upon the petition of one or more parties owning parts of a ditch and branches, where, as here, the principal ditch is in the highway, where that ditch was originally constructed by the highway commissioners and where the owners of lands adjoining the highway have merely drained their lands into the ditch in the highway. The portion of the ditch which was in the highway not only afforded a passageway for waters flowing off the adjoining lands but also drained the highway, and we think that the commissioners of highways, in their corporate capacity and as representatives of the public, within the meaning of this section are to be regarded as the owners of land. The public has a perpetual easement in the highway, and that easement is a freehold. (*Perry* v. *Bozarth,* 198 Ill. 328.) In the case of *Young* v. *Commissioners of Highways,* 134 Ill. 569, this court held that where commissioners of highways undertake to drain a public highway they possess the same rights and are to be governed by the same rules as adjoining land owners who may undertake to drain their own lands, excepting, however, cases in which the commissioners may proceed under the Eminent Domain law of the State. While that case is entirely dissimilar to this in its facts, we yet think the law as there stated places the public highway and the commissioners of highways in the same category with, and makes them bear the same burdens as, other lands and other land owners, so far as the laws pertaining to drainage are concerned. The situation here is precisely the same as though the lands in the highway were owned by private persons without the burden of the easement.

In 1903, with money furnished by subscription by certain land owners, the highway commissioners deepened the

ditch in the highway. Certain owners whose lands drained into the ditch paid nothing toward the expense of this work. These lands are now within the district in accordance with the prayer of the petition for the organization of the drainage district. It is insisted that these owners are not, within the statute, parties who have by voluntary action constructed ditches which form a continuous line or line and branches, because they took no part in the deepening of the ditch; that no parties can be regarded as having constructed or helped to construct the system of drainage as it existed when the petition for the organization of the drainage district was filed, except those who contributed to the deepening of the highway ditch in 1903. This position seems to us untenable. Before the ditch was made deeper, these owners who subscribed nothing to the expense of that work were the owners of lands which, with other lands involved in this suit, required a system of .combined drainage,—that is, an outlet was required for all the waters flowing off these lands and a common outlet was found through this ditch in the highway. The deepening of the ditch left the system of combined drainage in existence. It is not denied that the lands of each of these persons who did not help pay for the work in 1903 drained into the ditch both before and after the work of deepening was done. Under these circumstances it seems clear that these lands might properly be included in the petition for the organization of the district, even though the owners thereof contributed nothing toward improving the main ditch in 1903.

It is also complained that certain lands, the owners of which contributed toward the improvement of 1903, were not included in the petition for the organization of the district nor in the district when it was organized. This is not fatal to the organization. *Barnes* v. *Drainage Comrs.* 221 Ill. 627.

We have thus disposed of all questions presented by appellants. The order of the circuit court will be affirmed.

*Order affirmed.*