THE DRUMMER CREEK DRAINAGE DISTRICT *et al.* Defendants in Error, *vs.* D. K. ROTH *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1910.*

1. APPEALS AND ERRORS—*error in any judgment in the case is open to review on writ of error.* An appeal is a purely statutory remedy, and if a final judgment in the case is not appealed from in time, it is not open for review on appeal from a later judgment; but a writ of error brings up the entire record, and any error may be corrected, whether it be in the judgment to which the writ of error was taken or in another judgment in the case.

2. SAME—*all final orders in levee drainage proceedings may be reviewed in one writ of error.* Error in the final order organizing a levee drainage district, as well as error in the final order fixing damages and benefits in the condemnation proceeding and confirming the assessment, may be reviewed on one writ of error which brings up the entire record.

3. SAME—*effect of amendment of section 16 of Levee act in 1909.* The amendment of section 16 of the Levee act in 1909, providing that the order organizing the district shall be final and allowing separate or joint appeals or writs of error, so far as it affects the procedure by appeal or writ of error, supersedes the old law in cases where the appeal had not been perfected or' the writ of error sued out before such amendment went into effect.

4. SAME—*general limitation of Practice act applies to writ of error to review final order organizing a levee drainage district.* A writ of error can be sued out at any time within three years to review any final order organizing a levee drainage district, under section 16 of the Levee act as amended in 1909.

5. SAME—*when exception to final order organizing levee district is unnecessary.* If an error in the organization of a levee drainage district appears upon the face of the record of the county court it may be taken advantage of by any property owner interested, without objections and exceptions to the final order organizing the district being preserved by a bill of exceptions.

6. DRAINAGE—*every fact essential to jurisdiction to organize a district must appear in the record.* In establishing drainage districts the county court derives its jurisdiction from the statute alone, and every essential fact must be affirmatively shown by the records, as no presumption arises to support its jurisdiction.

7. SAME—*petition complying with statute is essential to jurisdiction of court.* A petition complying with the statute is essen-

tial to the jurisdiction of the county court to organize a drainage district, and such petition should be so drawn that it can be ascertained therefrom that it is signed by owners representing the necessary proportion of individuals and acreage, and the boundary lines must be so described that they can be traced on the map.

8. SAME—*when petition furnishes no basis for amended petition.* If the original petition to organize a levee drainage district is so defective that it cannot be ascertained with accuracy what the boundaries of the district are or whether it has the requisite number of signers required by the statute, it furnishes no legal basis for an amended petition and does not authorize the organization of a district.

WRIT OF ERROR to the County Court of Ford county; the Hon. H. H. KERR, Judge, presiding.

A. L. PHILLIPS, and CLOUD & THOMPSON, for plaintiffs in error.

RAY & DOBBINS, and L. A. CRANSTON, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding in the county court of Ford county for the organization of a drainage district under the so-called Levee act. The petition was directed to the December term, 1907, of said court. The proposed district included most, if not all, of the property in Gibson City and certain farm property lying southerly and westerly from said city. Under section 2 of said act (Hurd's Stat. 1908, p. 817,) the petition must be signed by a majority of the owners of lands within the proposed district who have arrived at lawful age and who represent one-third in area of the land, or by one-third of the owners of lawful age who represent a major portion of the land in area. It was intended by this petition to secure one-third of the owners and a majority of the area. After the original petition had been filed, an amended petition was filed by leave of court which added to the proposed district cer-

tain land not included and left out other land included in said original petition. The original petition was signed by certain of the property owners, but the amended petition does not appear to have been signed, either by counsel or by any property owners. After the amended petition was filed a hearing was had in the county court on the organization of the district and an order entered establishing the district.

The first contention of plaintiffs in error is that the district was not legally organized, in that the court had no authority to allow an amended petition to be filed without having such amended petition signed by as large a number of land owners, representing as great an amount of land, as is required for an original petition. It is insisted by defendants in error that the questions raised on this record must be decided in accordance with the amendments to the Levee act approved and in force as an emergency law on May 29, 1909. (Laws of 1909, p. 182.)

Two of the plaintiffs in error here, prayed an appeal from the order organizing the district to this court. That case was decided at the April term, 1909, of this court, and the appeal was dismissed as having been prematurely taken, under the statute then in force. (*Damon* v. *Barker,* 239 Ill. 637.) That decision held that the order organizing the district, under the then existing statute, was interlocutory and not final. Shortly thereafter the amendment heretofore referred to went into force. Section 16 of the amended act provides, among other things, that the order organizing the district "shall be final, and separate or joint appeals and writs of error may be taken to the Supreme Court by the parties affected thereby," etc. The writ of error in this case was sued out of this court after this amendment went into force. We are disposed to hold that the amendment, so far as it affected the procedure by appeal or writ of error, superseded the old law where the appeal had not been perfected or the writ of error sued out previous to the

time the said amendment went into effect. (*Chicago and Western Indiana Railroad Co.* v. *Guthrie,* 192 Ill. 579, and cases there cited.) This being so, it is argued by counsel for defendants in error that said section 16, as amended, makes the organization order final, and that this writ of error brings up only one final order in these proceedings, and that the last one entered herein, and not the order organizing the district.

It appears that since the appeal from the organization of the district was heard by this court in *Damon* v. *Barker, supra,* and dismissed, the commissioners, acting for the drainage district, filed their petition under the Eminent Domain law and condemned a strip of land across the lands of a number of the plaintiffs in error for the main ditch of the district, and afterwards filed an assessment roll and corrected assessment roll against the tracts of land through which the main ditch was to pass, and that an order was entered confirming the said assessment roll as to all the property assessed. It further appears that this writ of error has brought up the record not only of the special assessment and condemnation proceedings, but the judgment order and proceedings as to the organization of the district. Counsel for the defendants in error contend that the same rule should apply to writs of error bringing up records of final judgments or decrees as applies to appeals. We are disposed to hold otherwise. An appeal is purely a statutory right and must be exercised in accordance with the statute. (*Anderson* v. *Steger,* 173 Ill. 112.) A decree which finally fixes the rights of the parties must be appealed from within the time allowed by statute, and is not subject to review by an appeal from a later decree not involving such rights. (*Gray* v. *Ames,* 220 Ill. 251; *DeGrasse* v. *Gossard Co.* 236 id. 73.) Writs of error on this point are distinguishable from appeals. We do not find that there is any limitation in the Levee act fixing the time within which a writ of error must be

sued out from a final order under section 16 of that act. We think it necessarily follows that the general limitation of the Practice act (Hurd's Stat. 1908, chap. 110, sec. 117, p. 1637,) controls in this regard, and that a writ of error can be sued out at any time within three years to review any final order organizing a drainage district under said section 16. A writ of error can also be sued out under section 17*b* of said amendatory act to review the final order fixing "benefits and damages." "A writ of error to a final judgment brings up the whole record." (7 Ency. of Pl. & Pr. p. 899, and cases cited.) It has been held that a writ of error by one party brings up the entire record, and if any error exists to the prejudice of any party it may be corrected, whether it be in the judgment to which the writ of error was taken or in another in the same case. (*Morgan* v. *Ohio River Railroad Co.* 39 W. Va. 17.) While this court has held that in partition proceedings the decree which finally adjudicated the rights and interests of the parties could not be reviewed on appeal from a later decree in the same proceeding which did not affect such interests of the parties, (*Crowe* v. *Kennedy,* 224 Ill. 526; *Piper* v. *Piper,* 231 id. 75;) we have also permitted, in partition proceedings, the original decree fixing the rights of the parties and a later decree taxing costs against certain of the parties to be reviewed by one writ of error. (*Smith* v. *Roath,* 238 Ill. 247.) All the final orders complained of in these proceedings have properly been brought to this court by this one writ of error. To review them by one writ of error tends to prevent multiplicity of suits and simplifies litigation. Such a practice is in harmony with the authorities and supported by sound reason.

It is further insisted that only Barker and Phillips, among the plaintiffs in error, are in a position to raise an objection as to the organization of the district. It appears that none of the plaintiffs in error, except these two, preserved any exception to the order organizing the dis-

trict. If, however, the original petition was not signed by the proper number of petitioners or was materially defective in any other manner and the error was not cured by the amendment filed thereto, then such error would appear on the face of the record of the county court and could be taken advantage of by any of the property owners interested, without objections and exceptions being preserved by bill of exceptions. *Grand Pacific Hotel Co.* v. *Pinkerton,* 217 Ill. 61; *City of Chicago* v. *Mecartney,* 216 id. 377; *McChesney* v. *City of Chicago,* 151 id. 307; *Alley* v. *McCabe,* 147 id. 410; *Wiggins Ferry Co.* v. *People,* 101 id. 446; *Kitchell* v. *Burgwin,* 21 id. 40.

The original petition for the organization of the district, in describing the boundaries, reads, in part, as follows: "Commencing at the north line of section ten (10) in said town twenty-three (23), north, range seven (7), east of the third P. M., and extending south to the south line of section fifteen (15) in said town and range, thence west to the south-west corner of said section fifteen (15), thence south," etc. The description, continuing with various boundary lines, finally ends, "thence west to the place of beginning." Manifestly, this original petition was indefinite as to the starting point of the district boundary line. It might begin in the north line of section 10 at any distance, however small, east of the west line of said section and extend south to the south line of section 15, directly south of the starting point. The description did not commence at any definite point on the north line of section 10 or touch at any fixed point in the south line of section 15. This would permit such a variation in the point of commencement that the boundary lines could be so drawn as to make approximately a difference of 1280 acres in the district.

Section 4 of the Levee act provides, among other things, "the court, upon application of the petitioners, shall permit the petition, affidavit and orders to be amended," etc.

(Hurd's Stat. p. 818.)   Whether this provision would permit an amended petition changing the boundaries of the district to be filed by the court without the signatures of land owners and over the protest of some of them is a question that need not be here considered.   The original petition, however, should be so drawn that it can be ascertained therefrom that it is signed by owners representing the necessary proportion of individuals and acreage and the boundary lines should be so definite that they can be traced on the map.   An original petition filed under this act must comply with the statutory requirements.   It is impossible to ascertain with accuracy the number of acres of land and owners in the proposed district under the original petition. A map was attached to the original petition but was not referred to therein.   This map, however, does not assist materially in locating the boundary lines.   Tracing such boundary lines, as we understand them, it will be found that the original petition includes 2860 acres outside of said sections 10 and 15.   If all of these two sections be added, the proposed district would include 4140 acres, of which a major portion would be 2070 acres.   The acreage apparently represented by the signers of the original petition outside of section 11 is approximately 1733.86 acres. Gibson City is in section 11.   It cannot be told from the record how much land is included in the city lots owned by persons who signed the original petition.   The total number of signers to the original petition is 246.   Defendants in error claim that the whole number of owners in the district, according to the limits given in the amended petition, is 589, while plaintiffs in error contend there are some 750 owners.   In the list given in the original petition, owners are shown as to parts of sections 10 and 15, but on account of the indefinite starting point of the boundary line of the proposed district we have no means of knowing as to how many other owners there were in the part of the district included within sections 10 and 15,—whether five

or five hundred. A petition signed by the proper number of persons, representing the area required by said act, is necessary and jurisdictional in order to form a legal drainage district. The record fails to show that such a petition was ever signed or presented to the county court. In establishing drainage districts that court derives its jurisdiction from the statute, alone. No presumption arises to support its action in any particular. Every essential fact must be affirmatively shown by the records in order to give the court jurisdiction. (*Payson* v. *People,* 175 Ill. 267; *Illinois Central Railroad Co.* v. *Hasenwinkle,* 232 id. 224; *Spring Creek Drainage District* v. *Highway Comrs.* 238 id. 521.) The original petition being fatally defective, both as to its boundaries and the number of land owners signing as petitioners, it furnished no legal basis for the amended petition.

All of the judgment orders of the county court, so far as they affect the lands of plaintiffs in error, are reversed and the cause is remanded to that court.

*Reversed and remanded.*