THE WAYNE CITY DRAINAGE DISTRICT, Defendant in Error, *vs.* CAROLINE A. BOGGS *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1914—Rehearing denied April 8, 1914.*

1. DRAINAGE—*facts essential to jurisdiction of the county court must affirmatively appear in the record.* County courts derive the power to establish drainage districts from the statute, alone, and every fact essential to the jurisdiction must affirmatively appear from the record.

2. SAME—*petition must be such as the statute prescribes.* The conditions upon which the legislature has authorized the establishment of drainage districts must be complied with and the petition must be such as the statute prescribes.

3. SAME—*petition need not show, on its face, the acreage of the district or acreage owned by signers.* It is not necessary that the petition to organize a levee drainage district shall show, on its face, the exact acreage of the district and the acreage owned by the signers, but it is sufficient if the boundaries of the district are given and data furnished from which the total acreage and the acreage owned by the signers of the petition can be ascertained by proof. (*Drummer Creek Drainage District* v. *Roth,* 244 Ill. 68, explained.)

4. SAME—*the petition need not describe proposed work with accuracy and detail.* It is not necessary that the petition to organize a drainage district shall describe the location of the drains and ditches with the same accuracy and detail as are required in the report of the commissioners, and it is sufficient if it specifies the starting point and terminus of each ditch and gives the general route of each ditch with sufficient accuracy to advise the petitioners of its general course through the district.

5. SAME—*court is without jurisdiction if the petition fails to describe character of ditches.* The county court is without jurisdiction to enter an order organizing a levee drainage district if the petition merely describes the ditches as "ditches," without specifying whether they are to be open ditches or tile drains. (*Tennessee Drainage District* v. *Moye,* 258 Ill. 296, followed.)

6. SAME—*word "ditches" cannot be held to mean open ditches, only.* In view of section 57 of the Levee act, which provides that the word "ditch" shall be held to include any drain or water-course, it cannot be held that the use of the word "ditches" in a drainage petition necessarily means open ditches, only.

7. SAME—*right of person to withdraw signature from drainage petition.* Before a drainage petition is filed the signers may, upon

notice, withdraw their signatures, but if they again sign the petition their notice of withdrawal is ineffective and they are in the same position as voluntary signers who have given no notice of withdrawal, and after the petition is filed they cannot, under section 4 of the Levee act, withdraw their signatures except by consent of the majority of the other signers, unless their signatures were obtained by fraud or misrepresentation.

WRIT OF ERROR to the County Court of Wayne county; the Hon. VIRGIL W. MILLS, Judge, presiding.

RICHARD L. BOGGS, JAMES V. HEIDINGER, COOPER & BURGESS, ROSCOE FORTH, and HARRY M. MILLER, for plaintiffs in error.

THOMAS H. CREIGHTON, for defendant in error.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

At its July term, 1913, the county court of Wayne county entered an order finding that the Wayne City Drainage District was duly established as provided by law. Numerous persons owning land within said district have sued out this writ of error to obtain a reversal of that order.

The petition was filed June 12, 1911, for the establishment of the district under the Levee act, by persons representing themselves to be a majority of the owners of lands within the proposed district who owned a major portion, in area, of the lands proposed to be benefited. A hearing was had on the petition on July 17, 1911, which resulted in a finding that the petition was signed by more than one-third of the land owners owning lands within the boundaries of the proposed district, and that the persons who signed the petition were all adults and owned in fee more than one-half of all the lands in the district; that the work proposed was necessary and would be useful for the drainage of the lands proposed to be drained thereby and that commissioners should be appointed. On July 24, 1911, commission-

ers were appointed, who reported on April 7, 1913, setting forth a scheme of drainage radically different from that proposed by the petitioners. The order of July 17, 1911, recites the filing of objections to the granting of the prayer of the petition by certain land owners, among whom were some of the plaintiffs in error here. A number of the land owners also filed objections to the report of the commissioners, some of which attacked the jurisdiction of the court on the ground that the petition was insufficient. Subsequently motions were filed by all the objectors to dismiss the proceeding for want of jurisdiction, which motions were denied. On June 9, 1913, upon a hearing on the report of the commissioners and the objections thereto, an order was entered modifying the report in some respects, and thereafter, on July 9, 1913, the final order establishing the district was entered.

The first and principal ground urged for reversal is, that the petition was insufficient to confer upon the county court jurisdiction to take any steps towards the organization of the district. It is insisted that the petition is fatally defective because it is impossible to determine from the instrument itself the number of acres included within the proposed district and the number of acres owned by each of the petitioners, and because it fails to describe the location, route, character, extent, size and kind of the proposed ditches with that degree of particularity which the statute requires.

"County courts derive their power to establish drainage districts from the statute, alone, and every fact essential to the jurisdiction must affirmatively appear from the record. (*Payson v. People,* 175 Ill. 267.) The General Assembly having authorized the creation of drainage districts upon certain conditions, they must be complied with and the petition must be such as the statute prescribes.—*Drummer Creek Drainage District* v. *Roth,* 244 Ill. 68." *Aldridge* v. *Clear Creek Drainage District,* 253 Ill. 251.

By section 2 of the Levee act the petition is required to be signed by the requisite number of land owners owning the required area within the district, as therein specified, and to contain a general description of the lands proposed to be affected, and may pray for the organization of a drainage district by the name and boundaries proposed. In *Drummer Creek Drainage District* v. *Roth, supra,* it was held that the petition should be so drawn that it can be ascertained therefrom whether it is signed by owners representing the necessary proportion of individuals and acreage, and plaintiffs in error rely upon the holding in that case in support of their contention that the petition must afford such information that the exact acreage of the district and the exact acreage owned by the signers can by mere calculation be ascertained from the instrument itself. Such is not the effect of the holding in the *Roth case.* In that case, as was pointed out, the boundaries of the district were not accurately given. It was impossible to ascertain the extent of the district from the information furnished in the petition. The holding there was simply to the effect that the petition must contain such information as will enable anyone to ascertain with accuracy the number of acres of land and the number of owners in the proposed district. In this case there is no complaint that the boundaries of the district are not accurately stated in the petition. The basis of this objection is afforded by the fact that one side of the district is bounded by the meandering of the Skillet Fork river, and many of the tracts are described in the petition as being that part of a certain governmental subdivision lying south or west of Skillet Fork river, without giving the number of acres in the tract described. Every tract of land is described with sufficient accuracy to enable it to be located and the number of acres accurately ascertained. From this petition the boundaries can be definitely located and the exact acreage of the district definitely ascertained. It is not contemplated by the statute, nor is it so held in the *Roth*

*case, supra,* that the face of the petition must disclose the exact number of acres contained in the proposed district or the exact number of acres owned by the petitioners. It is only required that the petition shall furnish such data and information as to make the acreage possible of ascertainment. The court is required, upon the hearing, to take proof, either orally or by way of affidavit, based upon the information thus furnished by the petition, as to the acreage in the district, the number of owners of land lying within the district and the proportion of the lands owned by the petitioners. This petition contained the averment that the petitioners were a majority of all the adult land owners owning lands within the proposed district, and that they owned more than one-half, in area, of all the lands in the proposed district. The court, on the hearing, heard proof, both by way of affidavit and oral testimony, as to the truth of this averment, and found that the petition was signed by more than one-third of the land owners owning land within the proposed district, that the petitioners were all adults, and that they owned more than one-half of all the lands within the proposed district. The petition was sufficient in this respect.

That part of the petition which describes the location, route and character of the proposed ditches is as follows: "The main ditch beginning at the south-east corner of the south-west quarter of section 19, in township 2 south, range 6, east of the third principal meridian, and running thence on the most feasible route in a south-easterly direction till it intersects with Four Mile creek at the mouth of Fish slough; thence in a south-easterly direction through sections 29, 28 and 33 in said town and range, and section 3 in town 3, south, till it intersects with Trotter branch; thence in a south-easterly direction through sections 3, 2, 11 and 12 in said town and range, and 7, 8, 17, 16 and 15 in town 3, south 7, and on the most feasible route to intersect with the county line in said section 15; thence east

along the county line to Skillet Fork river. Lateral No. 1 beginning at the middle of section 18, on the north line of said section, in town 3, south 7, and running thence on the most feasible route one-half mile in a southerly direction; thence in a south-easterly direction on the most feasible route to the county line; thence along the county line to intersect the main ditch. Lateral No. 2 beginning at the north-east corner of section No. 1, in town 3, south 6, and running thence south on the section line to intersect with the main ditch. Lateral No. 3 beginning at the north-west corner of the north-east fourth of the north-west quarter of section 14, in township 3, south 6 aforesaid, and running thence in a northerly direction on the most feasible route one-half mile; thence in an easterly direction on the most feasible route to intersect with the main ditch. Lateral No. 4 beginning at the center of the section line between sections 7 and 18, in town 3, south 6 aforesaid, and running thence north on the half section line to the north line of section 6 in said town and range; thence in a north-easterly direction on the most feasible route to intersect the main ditch at the mouth of Fish slough. Lateral No. 5 beginning at the south-east corner of the north-east quarter of section 19, in town 2, south 6 aforesaid, and running thence southerly on the most feasible route to intersect the main ditch." This is the only description contained in the petition of the ditches or of the proposed work. It is urged that this is not a proper description of the proposed starting points, route and terminus of the work.

The statute contemplates that the petitioners shall propose, in a general way, a plan of the work desired to be done. As was said in *Aldridge* v. *Clear Creek Drainage District, supra:* "The evident purpose of the statute was, that those who would be specially assessed to pay the costs of the improvement should know from the petition specifically what was proposed to be done, so as to form a judgment as to the necessity or propriety of the work and its

advantages or disadvantages." The statute does not contemplate, however, that the petition shall contain such information as would constitute specifications upon which bids for the doing of the proposed work might be made. It is not necessary that the petitioners, under the provisions of the Levee act, should go to the expense of employing an engineer to estimate the exact size of the ditches proposed or to give the exact location of such ditches by courses and distances. It is only necessary that the petition should specify the starting point and terminus of each ditch, together with its general route, so as to afford reasonably accurate information to the parties interested of the extent and general course of each ditch. Should the court upon the first hearing act favorably upon the petition, the commissioners appointed are empowered to make any changes they may see fit in the starting points, route and termini of the ditches, and the work thus determined upon by the commissioners must be described with accuracy and in detail. It would be an unreasonable construction to put upon this statute to hold that the petitioners must first go to the trouble and expense necessary to describe the work with the same accuracy when it might not be adopted in many of its details by the commissioners. In this petition the starting point and terminus of the main ditch are accurately given and can readily be found. The route of the ditch is given with sufficient accuracy to advise the petitioners of its general course through the district. The starting point of each of the laterals is given with equal accuracy, and as to some of them the termini are also given with precision. In the case of two of the laterals—No. 3 and No. 5—the termini are not given with such accuracy as to enable them to be found in advance of the final location of the main ditch. They are given, however, with sufficient accuracy. If any more accurate description of the termini of these two ditches were required it would necessitate the location of the whole route of the main ditch by courses and dis-

tances. The starting points, route and termini of the ditches were sufficiently described.

Under the construction of this statute given in *Tennessee Drainage District* v. *Moye*, 258 Ill. 296, the petition was not sufficient to confer jurisdiction upon the court because of its failure to describe in any manner the character of the proposed ditches. In that case it was held to be necessary to describe in the petition the character of the proposed drain and to state whether it is to be an open ditch or a covered drain. This petition was silent as to the character of any of the proposed ditches, and afforded no information whatever to the parties interested as to whether it was proposed to construct open ditches or tile drains, or what the approximate sizes of the proposed ditches were to be.

Defendant in error insists that the word "ditch" has a well known meaning and refers only to an open ditch, and that therefore the petition is specific as to the kind of ditches proposed to be constructed. Section 57 of the Levee act is decisive of that contention. That section provides that the word "ditch," when used in that act, shall be held to include any drain or water-course, which, of course, includes both open and covered drains or ditches.

As the petition, for the reason given, was not sufficient to confer jurisdiction and must be dismissed at the cost of petitioners, there is no occasion to consider more than one of the numerous other errors assigned with respect to the proceedings had under the petition.

The order of July 17, 1911, entered by the court, contained, among other recitals, the following: "Now come C. C. Boggs and G. W. Johns and ask leave to withdraw the names of Belzic Draper," and twelve other persons named, "from the said petition;" and further, that "the court, having examined the said petition, finds that the notices for said withdrawals were given and filed before the petition was filed, and that since the giving of said no-

tices of withdrawals the said Belzic Draper" and five of the other persons named "signed said petition again and were voluntary signers thereon at the time said petition was filed." The order contains the further recital that "now come F. A. Schelenbaum" and nine other persons named "and ask leave to withdraw their names from said petition, and it appearing to the court that they, and each of them, were voluntary signers of said petition and that no notice of their desire to withdraw therefrom had been given to the other signers of said petition, and that the other signers object to the withdrawal of the aforesaid persons from the said petition and refuse to consent thereto, the said application and leave to withdraw is by the court refused and overruled." Plaintiffs in error interpret the portions of the order just quoted as denying the right of any of the petitioners to withdraw their names from the petition and as holding that each of the persons thus attempting to withdraw their names was a petitioner. This is not the effect of the order so far as it concerns the seven persons named who served notice of their withdrawal before the petition was filed and who did not again subsequently sign the petition. They had the right to withdraw in the manner pursued by them, and the court only finds that the withdrawal of the six persons who again signed the petition was ineffective. The order does not find that the seven persons named had not withdrawn from the petition. As to the ten persons who attempted to withdraw their names from the petition on the hearing, the court correctly held them to be petitioners. Section 4 of the Levee act provides that no petitioner shall have the right to withdraw from the petition except by the consent of the majority of the other petitioners thereon, or where it shall be shown to the satisfaction of the court that the signature of the petitioner was obtained by fraud or misrepresentation. This section applies as soon as the petition is filed. The court, by its order, further found from the evidence of witnesses pro-

duced that no fraud was practiced upon or misrepresentation made to any of the signers to induce them to sign the petition and that each of them signed the same voluntarily.

As the petition was not sufficient to confer jurisdiction upon the court the judgment of the county court is reversed and the cause remanded, with directions to dismiss the petition.          *Reversed and remanded, with directions.*