(No. 19450.

THE PEOPLE *ex rel.* Henry Fitton *et al.* Appellees, *vs.* ELMER EHLER *et al.* Appellants.

*Opinion filed December 20, 1929—Petition stricken Feb. 8, 1930.*

68

BOYER & LEONARD, and DOBBINS & DOBBINS, for appellants.

ROY R. CLINE, State's Attorney, HERRICK & HERRICK, LOUIS A. BUSCH, and EARL C. HARRINGTON, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Champaign county entered a judgment ousting the appellants from the exercise of the franchise of a supposed corporation known as Upper Salt Fork Drainage District, in the county of Champaign and State of Illinois, and from the exercise of the powers and duties of directors of·such corporation, from which this appeal has been taken.

The appellants filed a plea of justification to the information in the nature of *quo warranto* filed by the State's attorney charging usurpation, to which a demurrer was sustained. The district was organized in the county court of Champaign county under the Levee act, and the question presented by the plea and demurrer is, therefore, whether the plea shows that the county court had jurisdiction to enter the order declaring the district duly established as provided by law.

The demurrer assigned as special causes of demurrer, substantially, that the petition for the organization of the district did not show that it was signed by one-third of the adult owners of land within the district proposed to be organized, representing a major portion, in area, of such lands; that the lands of the district included lands in three other drainage districts, and it did not appear that the owners of such lands were petitioners for the organization of the Upper Salt Fork district; that it did not appear that the names of the owners of land were set out when known or that reasonable diligence was used in ascertaining the names of owners not known; and that the proposed ditch left the boundaries of the proposed district at three places other than its outlet and entered land wholly outside the proposed district.

The plea set out the complete record of the proceedings in the county court for the organization of the district.

In support of the judgment it is first argued by the appellees that the petition did not show any necessity for

the proposed district. The petition described in detail the fertile character of the lands in the district when not inundated with water or saturated because of insufficient drainage in the crop season, their value for agriculture dependent largely on the conditions of drainage and the sufficiency of outlets therefor, the winding course of the stream, the impediments which obstructed it so that the water in ordinary freshets would not pass through the channel without overflowing the banks to the damage of the adjoining lands and of the efficiency of tile drainage systems having outlets into the channel,—conditions all of which would be improved by the proposed straightening of the stream, removing obstructions to its flow and giving a uniform fall and greater velocity to the current. This was a sufficient showing of the necessity for the district.

It is also contended that the petition was defective because it did not show affirmatively that it was signed by the requisite number of qualified petitioners representing the required area of land in the proposed district. Section 2 of the Levee act provides that whenever "one-third of the owners of lands within a district proposed to be organized who shall have arrived at lawful age and who represent a major portion in area of the said lands, desire to construct a drain or drains," etc., across the lands of others for agricultural, sanitary or mining purposes and maintain the same by special assessments upon the property benefited thereby, such owners may file in the county court a petition signed by the requisite number of land owners owning the required area within the district proposed to be organized as in section 2 provided, praying for the organization of the district and the appointment of commissioners. The petition shows on its face, in the language of the statute, that the petitioners "are one-third of the owners of land within the territory herein proposed to be organized into a drainage district who have arrived at lawful age and represent a major portion in area of said

lands," and in this respect complies with the statute. It is not necessary to the validity of the petition that it contain the description of the different tracts of land severally belonging to the petitioners. The statute does not require the exact number of acres contained in the proposed district or the exact number of acres owned by the petitioners or by any land owner to be stated on the face of the petition. It is sufficient if the petition furnishes such information as makes the ascertainment of the acreage possible by investigation. It is made the duty of the court to hear evidence and determine whether or not the petition contains the requisite number of signatures of land owners representing the required area of lands. The petition in this case having averred that the petitioners were one-third of the owners of land who had arrived at lawful age and represented the major portion, in area, of the lands, the court ·heard proof and found that these statements were true. The petition was sufficient in this respect. (*Wayne City Drainage District* v. *Boggs,* 262 Ill. 338; *North Richland Drainage District* v. *Karr,* 280 id. 567.) The rule is the same under the Farm Drainage act. *Craig* v. *People,* 188 Ill. 416.

The appellees cite and rely upon *Drummer Creek Drainage District* v. *Roth,* 244 Ill. 68, and *Soldier Creek Drainage District* v. *Illinois Central Railroad Co.* 323 id. 350, in support of their claim that it is necessary that the petition be so drawn that it can be ascertained from its face that it is signed by the requisite number of owners representing the required area of land. In the former case, in describing the boundary of the district, the petition stated: "Commencing at the north line of section ten (10) * * * extending south to the south line of section fifteen (15), * * * thence west to the southwest corner of said section fifteen (15), thence south," etc., continuing with various lines, and ending, "thence west to the place of beginning." The place of beginning might have been a foot east of the northwest corner or a foot west of the northeast

corner of section 10. This description left it wholly uncertain whether sections 10 and 15 were intended to be included in the district or excluded from it. It was not only wholly impossible to ascertain the number of acres in the district and the number of land owners from the petition itself, but it was impossible by the introduction of evidence to show either the number of acres or the number of owners. The petition did not identify the lands proposed to be organized into a district and furnished no basis for the introduction of evidence on these questions. In *Wayne City Drainage District* v. *Boggs, supra,* it was said in regard to this case: "It was impossible to ascertain the extent of the district from the information furnished in the petition. The holding there was simply to the effect that the petition must contain such information as will enable anyone to ascertain with accuracy the number of acres of land and the number of owners in the proposed district." The substance of the holding in the *Roth case* on this point is that the petition must describe the boundaries of the district. The question in *Soldier Creek Drainage District* v. *Illinois Central Railroad Co. supra,* was different. That was an appeal from the order of the county court organizing the district and the case was reviewed upon the evidence heard by the county court. The county court found that the petition contained one-third of the owners representing a major portion of the lands, in area, within the proposed district, but on the appeal we held that this finding could not be correct but was in direct conflict with the agreed stipulation appearing in the record between the parties.

The order of the court in the *Soldier Creek District case* was subject to review and was reviewed upon a direct attack by appeal and upon such review was found not to be sustained by the evidence. The present information in the nature of *quo warranto* is not a direct attack but collateral to the order of the county court which is questioned.

The order is therefore not open to attack by this information unless the county court which entered it acted without jurisdiction. That court found "that the persons who have signed said petition are of lawful age and are one-third of the adult land owners owning a major portion, in area, of the land to be affected by such proposed work." This finding was conclusive that the court had jurisdiction and can not be collaterally attacked. By the filing of the petition in the county court and the posting and publication of the statutory notice to all persons interested, the county court had jurisdiction of the subject matter and of the parties and was authorized to act. "If it erred in holding that the petition was signed by the requisite number of adult land owners of the district or in refusing to permit persons who had signed the petition for the organization of the district to withdraw their names from the petition, the remedy of the parties in interest who deemed themselves aggrieved by the decision of the court was to have the case reviewed upon appeal or by writ of error, and not by a *quo warranto* proceeding." *People* v. *Waite,* 213 Ill. 421; *People* v. *Munroe,* 227 id. 604; *People* v. *Niebruegge,* 244 id. 82; *People* v. *Wells,* 291 id. 584.

The appellees argue that the petition is defective in that it does not purport to show the number of owners of land in the proposed district, known or unknown, or any diligent efforts to ascertain the names of unknown owners of land in the proposed district. This is not required by the statute, which merely requires in this particular that the petition shall set forth the names of the owners when known, and does not require that it shall state what efforts have been made to ascertain the names of owners who are unknown. The petition states: "The names of the owners of said lands so far as known to the petitioners, with a general description of the lands within said district owned by each, are as follows, so far as your petitioners are able to ascertain," followed by a list of names with descriptions

of property. This is a compliance with the requirements of the statute. *Huston* v. *Clark,* 112 Ill. 344.

Objection is further made to the petition that the plea shows it to have been signed by at least seven persons whose lands are located in other drainage districts and was signed by fourteen persons who do not appear to be owners of land within the proposed district. In regard to the seven owners of land in other drainage districts, we held in *People* v. *Dick,* 276 Ill. 516, that where the owner of land, by connecting his drains and making formal application, has had his lands annexed to a drainage district and afterward voluntarily connects other drains with those of another drainage district, which makes an order annexing the land to that district also, neither he nor his successor in title can complain that the land is included in two districts but each district may assess the land for the benefits derived from the drainage through the drains of that district. The owners of lands in other districts who have petitioned for the organization of this district certainly can not complain of their inclusion in the district when organized, and no injury has been suggested which would entitle any other land owner to complain of their inclusion in the district. The petition shows on its face that it is signed by forty persons. It does not appear that any of the signers were not owners of land within the proposed district, and the court found that the persons who had signed the petition were of lawful age and were one-third of the adult land owners owning a major portion, in area, of the land.

Another objection to the organization of the district made by the appellees is, that the plea does not show that the hearing on the petition was set far enough ahead to permit the required publication notice to be given. On the petition being filed with the clerk, section 3 of the statute requires him to cause three weeks' notice to be given by posting, and publication in a newspaper at least once a

week for three successive weeks. The court found that the notices required by the statute were posted on March 13, 1925, the day the petition was filed, and publication was made once a week for three successive weeks in a newspaper, as required by the statute. The notice stated that the hearing would be on April 3, 1925, which was three weeks after March 13, the day of publication. Section 6 of the statute in relation to notices provides that "in computing the time for which any notice is to be given * * * the first day shall be excluded and the last included, unless the last is Sunday, and then it also shall be excluded." Where a statute provides that ten days' notice shall be given of any action to be taken, the action may be taken on the tenth day after the notice. (*Fiedler* v. *Eckfeldt,* 335 Ill. 11.) The notice was given for the time required by the statute.

It is also objected that the plea does not show the certificate of publication or of mailing the notices. The statute does not require the certificate of the publication or mailing to be filed, but only provides that the certificate of the clerk or the affidavit of any other reputable person affixed to a copy of the notice shall be sufficient evidence of the posting; mailing and publication of the notices. The finding of the court in its order of the posting, publication and mailing of notices is sufficient, and such finding may be based on testimony heard in open court. *People* v. *Darst,* 285 Ill. 533; *Stokes* v. *Bay Bottoms Drainage District,* 278 id. 390.

It is further objected that the court did not find that the proposed drains, ditches and other work are necessary or will be useful for the drainage of the lands proposed to be drained. The court found "that the proposed drains, ditches and other work so proposed in said petition are necessary and will be useful for the lands proposed to be drained thereby, for agricultural and sanitary purposes."

While this finding is not in the identical language of the statute and omits the word "drainage," its meaning and effect are the same as if the words of the statute had been exactly followed.

Another objection to the sufficiency of the plea is, that it shows the original petition proposed to dredge, clean out, straighten and improve Salt Fork creek, making an open ditch approximately ten feet deep, with a bottom width of fifteen feet at the upper end and of forty feet at the lower end; that the commissioners found that the work proposed was not altogether proper and feasible and adopted the plan in the report of the engineer which provided for a ditch ten feet wide at the source and graduated the width to sixty feet at the mouth, and that the plea does not show the specifications for the construction of the open ditch or the depth of the proposed open ditch. Section 12 of the statute provides that the commissioners shall not be confined as to the point of commencement, route or termini, number, extent or size, manner of construction, location, plan or extent of any levee, ditch or other work to that proposed by the petitioners, but shall locate, design, lay out and plan the work in such manner as they shall think will drain or protect the petitioners' lands with the least damage and greatest benefit to all lands to be affected. The plea shows in the engineer's report, approved by the commissioners and the court, the specifications for the ditch, together with a profile divided into 100-foot stations, showing the depth of the ditch and its cross-section. The plea shows that the estimated cost of the work is $99,088. The court approved the report of the commissioners that the aggregate amount of benefits to the lands included in the boundaries of the proposed district will greatly exceed the cost of construction, including the damages, cost of right of way, incidental expenses and cost of proceedings therefor. This finding of the county court cannot be reviewed in a proceeding in the nature of *quo warranto.*

The appellees also object that the plea shows that the petition as filed was amended on the application of fourteen persons who were allowed to join in the original petition as petitioners for the organization of the proposed district, and does not show there was any hearing on the application or any other hearing on the petition after the granting of the application, that the area thus annexed was not described and that no qualifications of the fourteen persons to join in the original petition were shown, and it is impossible to tell from the plea whether or not, when the fourteen persons were permitted to join in the petition, the purported district was so enlarged that the petitioners constituted the required number of petitioners owning the required area of land. It is insisted that there is no authority in the Levee act for amending the petition except on the application of the petitioners, and that this action shows that the petition is null and void. The plea does not show any amendment to the petition. The record shows in regard to the supposed amendment that fourteen land owners in the district (naming them) came and presented to the court their written motion that they be allowed to join in the petition for the organization of the district. This motion was allowed, and thereupon the commissioners asked leave to amend their report and the map of the proposed drainage district so reported by them, which leave was granted and the commissioners filed their amendment, which is set out in words and figures. Three of the fourteen were signers of the original petition, and there is no allegation that the others ever did sign the petition, nor is there anything to show that they did. The action was of no importance. The allowance of the motion without an actual amendment of the petition had no effect on the status of the case.

The appellees object that the petition does not show that it was amended or what area of land was added to the proposed district. This objection is somewhat incon-

sistent with their claim that the petition was amended after it was filed, upon the application of the above fourteen persons. The record does not show any amendment and does not show any land added or change in the number of signers of the petition. The boundaries of the district described in the original petition are the same as the boundaries of the district as finally organized by the order of the court, except the exclusion of the lands of Mary T. Fitton and the lands of Johanna C. Buhs.

The plea shows that at two places the main ditch of the district extends beyond the district's boundaries, to which it afterward returns, and it is argued by the appellees that the plea is defective for this reason. If the location of any part of the ditches of the district as·described in the petition was without the boundaries of the district the objection would not go to the jurisdiction of the county court in the organization of the district. By the filing of the petition with the requisite number of signers the court acquired jurisdiction of the subject matter, and any objection to the character of the work or the location of the ditches did not affect the jurisdiction so as to subject the order of the court to collateral attack but the order could only be reviewed in this respect by an appeal or writ of error. *People* v. *Wells, supra.*

An objection is made to the sufficiency of the plea because it shows that the court failed to acquire jurisdiction of the person of Mary T. Fitton. ·Whether or not the court obtained jurisdiction of her person, her land was excluded from the district in the final order. After the final order of organization of the district the land of Mary T. Fitton which had been excluded from the territory of the district was annexed, on the petition of the commissioners, to the district. It is contended that the only authority for the commissioners to exclude any lands is set out in section 12 of the Levee act, and does not include authority for excluding lands that will be benefited; that there is no

authority for excluding land for the purpose of obtaining the jurisdiction of the court. It is contended that the action of the commissioners in excluding Mary T. Fitton's land to avoid the question of jurisdiction, and, after obtaining the final order of the court, immediately at the next term petitioning to have her lands annexed on the ground that they would be benefited by the proposed work, was clearly for the purpose of avoiding the question of jurisdiction of the court, and that these two transactions, excluding the land from the petition for the organization of the district and annexing the land after the district was organized, vitiated the entire proceedings, because the plea shows that it was done for the purpose of evading the statute and defeating the lawful rights of Mary Fitton. The county court had jurisdiction of the subject matter. If it had not jurisdiction of the person of Mary Fitton the order of organization would be void as to her. As to every other land owner it would be valid. The fact that her land was not included in the district organized would not have been available to any other land owner to affect the organization of the district. If the organization of the district was void as to her, then, when the petition was filed for the annexation of her land to the district, she might have presented her objection to the annexation because as to her the district was not organized, and the court would then have proceeded to determine the question whether her land, under the circumstances, could be annexed to the district. She did object to the annexation of her land and her objection was not allowed but her land was annexed to the district. If she was dissatisfied with this result her remedy was by an appeal from the order. But these facts did not affect either the order of the court declaring the district organized or the order annexing her land to the district, so as to have either the one or the other reviewed upon an application in the nature of *quo warranto*. The order annexing lands to the district al-

ready organized at a time when the court had jurisdiction of the subject matter could not affect the jurisdiction of the court to enter the order of organization. *Stokes* v. *Bay Bottoms Drainage District, supra.*

Johanna Buhs was the owner of eighty acres within the boundaries of the district, described in the petition. Her land was already in another drainage district and she did not sign the petition. Therefore her land was not and could not be included in the new district, and it is contended because of this fact, and the further fact that a part of the main ditch of the district is located across her land, the organization of the district was invalid. She is not a relator and the record does not show any objection on her part to the omission of her land or the location or construction of the ditch across it. The court having jurisdiction, if there was any error in its order it could be corrected only by an appeal or writ of error.

There is in the appellees' brief an intimation of a doubt as to the right to count commissioners of highways as qualified petitioners, but it was held in *People* v. *Magruder,* 237 Ill. 340, that commissioners of highways, in their corporate capacity and as representatives of the public, are to be regarded as the owners of land. That was a farm drainage district, but the principle is no different with reference to Levee districts.

In several instances the petition, in designating the land owners, giving the individual names, refers to the owners as heirs of a certain person, as the Anna Loeschen heirs, the Fred C. Mennenga heirs, the Diedrich F. Eiskamp heirs, etc. *Hughes* v. *Sellers,* 34 Ind. 237, is cited as holding that this is not giving the names of the owners. In referring to this case in *People* v. *Barnes,* 193 Ill. 620, in which the petition for the organization of the district designated the names of the owners of land in two instances as "Joseph Drehr Hrs." and "Jos. McKinney Hrs." the court said: "In the petition for the organization of the district

the names of the owners of the lands in two instances were designated as 'Joseph Drehr Hrs.' and as 'Jos. McKinney Hrs.' The contention is that by these names the statute is not complied with. The statute requires that 'the names of the owners of the several tracts of land, together with their post-office address, shall be given so far as known.' It is said that designating the owners as Joseph Drehr heirs and Joseph McKinney heirs is not giving the names of the owners, the contention being that to say that the owners of lands are the heirs of a designated person is not giving the names of the owners. Counsel, upon this branch of the case, refer to a decision in Indiana holding that a petition for laying out a highway which fails to give the names of the owners, occupants or agents of the land through which the highway passes is defective, and that it is not a sufficient designation of such owners to say that they are the heirs of a person named. (*Hughes* v. *Sellers,* 34 Ind. 237.) We are not advised as to the provisions of the Indiana statute referred to in the case cited, but we are satisfied that the decision there announced is not applicable to this case, where the petition is merely required to state the names of the owners so far as known. * * * We think that the allegations of the petition that the Joseph Drehr heirs and the Joseph McKinney heirs were the owners, so far as known to petitioners, were sufficient to give the commissioners jurisdiction."

The record set forth in the plea of the appellants shows that the petition for the organization of the district was sufficient to give the county court jurisdiction of the cause, that the notice posted and published gave jurisdiction of the parties, and that the order of the court finding the Upper Salt Fork Drainage District duly established as provided by law is a valid order, not subject to review in this proceeding. The information in the nature of *quo warranto* cannot be used to try again the issues tried in the county court. Its judgment rendered in the exercise of

the jurisdiction conferred upon it by law can be reviewed only by appeal or writ of error.

The judgment of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer to the plea.

*Reversed and remanded, with directions.*