VIRGINIA K. DONHAM *et al.* Appellees, *vs.* JAMES E. JOYCE *et al.*—(JACOB GLOS *et al.* Appellants.)

*Opinion filed December 17, 1912—Rehearing denied Feb. 5, 1913.*

1. JURISDICTION—*when parties cannot complain, on appeal, of the insufficiency of notice by publication.* Defendants to a suit for partition and to cancel tax deeds as clouds, who are personally served with summons and appear, answer the bill and participate in the hearing before the master in chancery and before the court, cannot complain, on appeal, that the court did not have jurisdiction of the persons made parties as unknown owners because the certificate of publication was insufficient.

2. COSTS—*when holders of tax deeds cannot complain that they are charged with large portion of costs.* Where the holders of invalid tax deeds refuse a tender, made in open court, of a sufficient amount to reimburse them for all proper expenditures and persist in obstructing the complainants in their efforts to partition the property, with no better title than such tax deeds, which were admittedly invalid as to part of the lots, and with no title whatever to the other lots, they cannot complain that they are charged with such portion of the costs as are occasioned by their conduct.

3. SAME—*when the deposit of gross sum for all holders of tax titles is a sufficient tender.* Where the owner of land files a bill for partition and to remove as clouds the tax deeds and conveyances based thereon, and deposits in court a sufficient sum of money to reimburse all of the defendants holding any interest under the tax deeds, he should be relieved from any subsequent costs made by such defendants in attempting to adjust their conflicting claims to the reimbursement fund.

4. SAME—*a master in chancery's fees for taking testimony are not limited to oral testimony.* The word "testimony," as used in section 20 of the Fees and Salaries act, allowing a master in chancery fifteen cents per hundred words "for taking and reporting

testimony under order of court," is used with the meaning of "evidence," and includes documentary evidence introduced before him on the hearing, as well as oral testimony.

5. STATUTES—*words of a statute should be given their popular meaning.* Where words having both a technical and a popular meaning are used in a statute courts should accord to them their popular meaning, unless the nature of the subject indicates or the context suggests that they were used in their technical sense.

APPEAL from the Superior Court°of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding.

JOHN R. O'CONNOR, and ALBEN F. BATES, for appellants.

ROBERT ZALESKI, (LACKNER, BUTZ, VONAMMON & McGREGOR, of counsel,) for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill for the partition of twenty lots in the city of Chicago among tenants in common, and incidentally for the removal of a large number of tax deeds and other instruments as clouds upon the title. Robert B. Donham filed the original bill on August 11, 1911. Subsequently, and before the cause was disposed of, he died, and his widow, Virginia K. Donham, and his two daughters, Virginia B. and Roberta E., were substituted as complainants. A supplemental bill was filed after the death of Robert B. Donham containing the usual allegations of ownership, as tenants in common, of the premises, and set forth, in detail, the several tax sales, and recited the issuance of deeds thereon to Jacob Glos, Ezra C. Fahrney, Charles J. Marhoefer, Reginald G. R. Crane, J. A. Brophy and the town of Cicero. Eighty-seven persons were made defendants by name, and all other persons who might have any interest, title or claim to the premises were made parties as "unknown owners." The bill alleged that the premises were owned in fee, in equal parts, by complainants and James E. Joyce, and alleged the manner in which such title was

257 - 8

obtained from the government of the United States. The prayer was for partition of the premises, an accounting between complainants and their co-tenant, Joyce, and the removal of numerous instruments of record as clouds upon the title, including the tax deeds above referred to and various conveyances made by the holders of the void tax titles. The defendant James E. Joyce answered the bill, admitting all of its allegations, and made no contest. The town of Cicero filed a formal answer claiming an interest by virtue of certain tax deeds, but afterwards accepted a tender made in open court and made no further contest. No further contest was made by any of the defendants except Jacob Glos, Emma J. Glos, A. H. Glos, D. Arnold and August A. Timke, each of whom filed a separate answer, all answers being substantially alike, in which they severally denied all of the allegations of the bill and alleged that each of said defendants was the owner of all the lots in controversy. Under an order of court entered October 5, 1911, directing the complainants to deposit with the clerk $1017 to reimburse Jacob Glos and his grantees as their interest might thereafter be determined, that amount was accordingly paid into court, and an order of reference was made directing the master in chancery to take the proofs and report the same to the court, with his conclusions of law and fact thereon. C. L. Bates was made a party because she was a grantee in a deed made by Jacob Glos. The complainants being unable to ascertain who C. L. Bates was, or her residence, had service made upon her by publication. A default was then entered against her. During the progress of the hearing before the master it was discovered that C. L. Bates was Clara L. Bates, daughter of Jacob Glos, who had recently married a man by the name of Alben F. Bates. Thereupon summons was sued out for Clara L. Bates and served, and she then appeared and filed an answer to both the original and supplemental bills. After Clara L. Bates was brought in by summons the case

was re-referred to the master in chancery and all of the evidence which had been offered before her answer was re-introduced, except certain evidence which related to the accounting between the co-tenants and settlements with other tax title holders which in no way concerned her. The master made an extended report, in which he set out the various defects in the tax deeds, made an itemized statement of the account between the complainants and Joyce, found the amount due from Joyce to the complainants and the amount due the holders of the several tax deeds, and recommended that a decree be entered as prayed for, that the tax deeds be set aside and that $500 be allowed as a solicitor's fee. Objections were filed to this report, which were overruled and subsequently were ordered to stand as exceptions before the court, where they were again overruled and a decree entered in accordance with the prayer of the bill. The decree found that the master was entitled to $770 for his fees, $154.20 of which was allowed for a stenographer. Of this amount Jacob Glos, Emma J. Glos, A. H. Glos, D. Arnold and August A. Timke were required to pay $600. An execution was awarded against them for the collection of that amount. To reverse this decree Jacob Glos, Emma J. Glos, A. H. Glos, August A. Timke and D. Arnold have prosecuted an appeal to this court.

The principal errors relied upon for reversal of the decree are: First, that the court did not have jurisdiction of the parties; second, that the taxation of costs against the appellants was illegal; third, that the master's charges were excessive; fourth, that the evidence was insufficient to support the decree. These several assignments will be considered in the order in which they are above stated.

*First*—Appellants' first contention is, that the court did not have jurisdiction of the persons who were made parties as unknown owners and parties interested. It appears that Jacob Glos executed a trust deed to August A. Timke, trustee, to secure certain notes which had presumably passed

into the hands of persons unknown to appellees. The holders of such notes were made parties under the description of "unknown owners." The affidavit of non-residence also stated that there were other unknown owners of other interests in the premises and that there are other persons interested in the cause whose names and places of residence were unknown and that such persons may make some claim of title to the premises, and all such persons were made parties by the name of "unknown owners" of the premises described in the bill. No objection is made to the sufficiency of the affidavit. A notice was published in the *Chicago Daily Law Bulletin,* and no objection is made to the form or sufficiency of the notice. The certificate of publication, however, is said to be insufficient because it does not appear to have been made by a duly authorized agent of the Law Bulletin Publishing Company, a corporation which publishes the paper in which the notice appeared. The certificate is in proper form and purports to be made by the Law Bulletin Publishing Company, a corporation publishing the *Chicago Daily Law Bulletin,* and recites the publication of the notice once in each week for four successive weeks, giving the dates of the first and last publications and other necessary facts, and is signed, "Law Bulletin Publishing Co., Publishers, by C. L. Peyton, Secretary." Appellants contend, under the authority of *City of Chicago* v. *Stein,* 252 Ill. 409, and other cases reviewed in that case, that the certificate of publication signed by a corporation by its secretary is insufficient to confer jurisdiction unless there is some proof showing the authority of the secretary to make such certificate on behalf of the corporation. The situation presented by the *Stein case* differs from the case at bar in this: In the *Stein case* one of the defendants who had been served in a special assessment proceeding by publication, entered a limited appearance and raised the question whether the certificate of publication was sufficient to give the court jurisdiction to confirm the assessment. The

court below sustained the certificate of publication and the defendant Stein appealed to this court. In that case the appellant was complaining of the defective service upon him. His property was involved in the confirmation of the assessment. He was therefore in a position to raise the question of a sufficiency of the certificate of publication in so far as it applied to him. In the case at bar all of the appellants were personally served with summons, appeared in the court below, answered the bill and participated in the hearing before the master and before the court, and have appealed from the decision to this court. There is no question of the jurisdiction of the court over appellants.

Appellants' complaint is, that some other defendant or defendants who were made parties under the name of "unknown owners" were not properly served. Without deciding whether the certificate of publication would be sufficient if called in question by some one who was injuriously affected thereby, we think a sufficient answer to appellants' contention in this regard is, that whatever error may have been committed in respect to the certificate of publication, it does not injure appellants and they cannot complain of it. In *Short* v. *Raub,* 81 Ill. 509, this court held that a party can only complain of such errors as affect his own interests, and, applying that rule to a bill to foreclose a mortgage, it was held that a party cannot complain that another defendant who makes no objection was not properly brought into court by publication. It was there said: "Whether these proceedings are defective or not it is not necessary to determine, as that question does not concern the appellants to this record. If any error has been committed it only affects the rights of the New York State Loan and Trust Company, and so long as that company does not complain others ought to be satisfied." In *Culver* v. *Cougle,* 165 Ill. 417, the same rule was again applied in a chancery proceeding to foreclose a deed of trust. It was there assigned for error that the court allowed certain defendants

to the bill to be defaulted who were brought in by publication of notice under a defective affidavit. It was there held that the defendants who were properly in court by entry of appearance could not complain because other defendants were not properly brought into court. It was there pointed out that the error, if one was committed, related only to those defendants who had been defectively served, and that they were the only persons who had any just ground of complaint. There are many other cases announcing the same general principle. *Fergus* v. *Tinkham,* 38 Ill. 407; *National Bank of Pontiac* v. *King,* 110 id. 254; *Beal* v. *Harrington,* 116 id. 113; *Farnam* v. *Borders,* 119 id. 228; *Walker* v. *Tink,* 159 id. 323; *McFarland* v. *McFarland,* 177 id. 208; *Gottschalk* v. *Noyes,* 225 id. 94.

*Second*—Appellants' second contention is, that the taxation of costs against them was illegal. The master found that seven-eighths of the testimony taken was made necessary by appellants' claim of ownership of all the premises described in the bill and their refusal to accept the tender made in open court by appellees for themselves and on behalf of their co-tenant, Joyce, and recommended that seven-eighths of the costs, including stenographer's fees incurred before the master, should be charged to appellants. Following this recommendation, the court decreed $600 of the costs against appellants and awarded execution therefor. Appellants contend that the proofs do not support this decree for costs against appellants. The evidence shows that Jacob Glos conveyed one of the lots in controversy to the other appellants by quit-claim deeds before the bill was filed, and that he had no claim or title to said lot, by virtue of any tax deed or otherwise. It is also shown that there are a number of other lots to which neither of appellants had any shadow of claim or title, yet in their several answers each of the appellants claimed and insisted that he was the owner in fee of all the lots, including some seven lots which had no tax deeds outstanding against them. It also ap-

pears that appellants, by their solicitor, cross-examined witnesses before the master at great length in respect to matters in which the appellants had no interest, the only effect of which was to unnecessarily encumber the record. The course pursued in this regard was an abuse of the privilege of cross-examination. It is admitted that a sufficient amount to reimburse appellants for all proper expenditures on account of their tax titles was tendered in open court and afterwards deposited with the clerk for the benefit of whoever might be found entitled to it. Appellants refused to accept this tender and have persistently sought to obstruct appellees in their efforts to have a partition of these premises, with no other or better title than tax deeds which were confessedly invalid as to a part of the lots and no title or claim of any kind as to the balance of the premises. Had appellants accepted the money paid into court for them and waived further contention, as some other of the defendants did, this litigation would have been terminated long ago and a very large portion of the costs would not have been incurred. When a litigant thus piles up costs in a fruitless effort to defend that which is indefensible, and for no apparent reason other than the luxury of a lawsuit, it is no hardship to require him to pay the expenses of his diversion.

Appellants further contend that the tender in this case, being the gross sum of $1017 as reimbursement for the setting aside of the tax deeds that had been issued to Jacob Glos and for the benefit of all defendants as their interest might thereafter appear, was not a tender which could have been accepted by appellants, and therefore it was erroneous to adjudge costs against them. The amount tendered and paid into court was the proper sum necessary to reimburse all of the defendants below who had any interest or claim in any of the thirty-seven tax deeds which had been issued to Jacob Glos upon the lots in controversy. As already stated, numerous conveyances were made of these lots by

Jacob Glos, and in these instruments he appears to have conveyed some lots not included in any of his tax deeds. The interests of all other appellants, as well as the interests of any defendants who were joined as unknown owners, were acquired, either directly or indirectly, from the appellant Jacob Glos. When his tax titles were declared invalid all subsequent conveyances based thereon were likewise adjudged illegal. The numerous shifting, interlacing and overlapping conveyances by appellant Jacob Glos rendered it exceedingly difficult, if not impossible, for appellees, without the aid and co-operation of appellant Jacob Glos, to ascertain the exact portion of the $1017 that would be due the several defendants below. Among other conveyances made by Jacob Glos was a trust deed to August A. Timke to secure a note for $100,000, payable to bearer. Appellees did not know, and had no means of finding out, who held this note, and Jacob Glos refused to furnish any information on that subject. It was a practical impossibility to make a tender to each person of the amount which might afterwards be found due him. Nor do we think that it was incumbent upon appellees to divide the gross amount and tender to each appellant a sum which was supposed to cover his interest. The owner of real estate which has been sold for taxes who comes into a court of equity for the purpose of having the tax deeds removed as clouds upon his title ought not to be required to look beyond the records for information as to the ownership of the tax titles. A land owner coming into equity for the purpose of removing a void tax title, where there are conflicting claims to the reimbursement fund, ought not to be required to determine in advance, and at his peril, the rights of the several persons who may be interested in such fund. When he brings all of the parties interested before the court and brings into court a gross sum sufficient to satisfy all of the claims, he should be relieved of any subsequent costs made by the claimants in attempting to adjust their rights among

themselves. Such a bill, when filed by the owner, is in some respects like a bill in the nature of a bill of interpleader. The land owner is the custodian of the reimbursement fund and brings before the court the several persons who are supposed to have a claim or interest therein, and having done so pays the gross sum into court. When he does this he should be discharged from any costs that are thereafter made by the defendants in settling their several interests in the fund. Bills of interpleader and bills in the nature of bills of interpleader may be filed by the custodian of the fund, and it has never been held that the complainant in such bills was required to divide the fund and tender to each party his share before he could be discharged from costs. While the bill in this case is not, strictly speaking, either a bill of interpleader or one in the nature of a bill of interpleader, still it is, we think, so far analogous as to be subject to the rules applicable to such bills. This court has sustained numerous decrees in this class of cases which directed deposits to be made for the use of different defendants as their interests might thereafter be determined. Among the cases where such decrees have been sustained the following may be cited: *Glos* v. *Ault,* 221 Ill. 562; *Glanz* v. *Miller,* 230 id. 196; *Glos* v. *Cass,* id. 641. In our opinion the deposit of a sufficient amount to reimburse all parties who held any interest under the tax deeds, in a gross sum, with the court, was sufficient to warrant the decree adjudging a portion of the costs subsequently made against appellants.

*Third*—Appellants' third contention is, that the master's fees are excessive. The precise objection made to the fees of the master is, that he charged and was allowed fifteen cents per hundred words for certified copies of various instruments that were offered in evidence. The court found that John S. Hummer, the master in chancery to whom the cause was referred, had "taken and certified the testimony and documentary evidence, containing 2778 folios of one

hundred words each, for which the statutory fee is fifteen cents a folio, for which he was entitled to $416.70." Appellants challenge this item on the ground that the master is not entitled to fifteen cents per hundred words for taking down the exhibits; that the allowance of fifteen cents per hundred words should be limited to the oral testimony that is taken and reported before the master, and that his allowance for examining and reporting upon the evidence is all that he can legally charge, so far as documentary evidence is concerned. The determination of this question involves a construction of section 20 of the Fees and Salaries act, which provides as follows for the fees of masters in chancery: "For taking depositions and certifying, for every hundred words, fifteen cents. For taking and reporting testimony under order of court, the same fee as for taking depositions." Whether the language, "taking and reporting testimony," authorized the allowance to the master of fifteen cents per hundred words for the contents of documentary evidence that may be offered before the master, or certified copies of instruments of evidence, does not seem to have been passed on in this State. No authority is cited by either party, and we have been unable to find where this language has been construed with reference to the point here raised or where similar language has been construed by courts in other jurisdictions. The word "testimony," as used in the statute, is not restricted to the oral testimony given by the mouths of witnesses. It is used as synonymous with the somewhat broader term "evidence," and includes whatever may be offered in the way of testimony, either written or oral. The word "testimony," strictly and accurately speaking, is not as broad in its meaning as the word "evidence." It is a recognized rule of interpretation that common or popular words, when used in a statute, are to be understood in a popular sense, and technical words pertaining to any science, art or trade in a technical sense. The general rule is that the words of a statute are to be

taken in their ordinary and popular sense, unless it plainly appears, from the context or otherwise, that they were used in a different sense. (Sutherland on Stat. Const. sec. 390.) If words which have both a technical and a popular meaning are found in a statute or a constitution, the courts will accord to them their popular meaning unless the nature of the subject indicates or the context suggests that they were used in their technical sense. The word "testimony," as we have already suggested, in its common and ordinary acceptation means evidence, and is frequently used, even by those well versed in the law, as synonymous with that term. We think a fair and reasonable construction of the statute authorizes the master in chancery to charge fees at the rate of fifteen cents per hundred words for documentary evidence introduced before him in the hearing of a cause under an order of court. We are led more readily to this construction from a consideration of other provisions in our statute in relation to fees and salaries. Thus, in section 14, which fixes the fees of the clerk of the circuit court, we have a provision for "taking depositions when requested and certifying to and sealing the same, for every one hundred words, in counties of the first class, fifteen cents, and in counties of the second class twelve cents." (Hurd's Stat. 1909, p. 1138.) A like provision is found in section 18 in reference to fees of the county clerk, and in section 28 of the same chapter a similar provision is made for the fees of notaries public. If these several sections are carefully examined and the language providing for fees for taking depositions is compared with the corresponding clause in section 20, which is the section under consideration here, it will clearly appear that the several phrases, "taking depositions" and "taking testimony," were used by the legislature with the intention of providing a similar basis for computing the compensation of the several officers named in the different sections. It will also be found that provision is made for fees for these officers,

and others, for certain services in a gross sum. Thus, fees are provided for the county and circuit clerks for taking and filing an appeal bond and issuing a *supersedeas,* fifty cents; twenty cents for taking a bond for costs; ten cents for opening and filing depositions; eighty cents for issuing a dedimus to take depositions; and so with every official service that is or may be required of these officers. But in none of these sections is there any specific fee allowed for receiving a document or an exhibit in evidence, either in the taking of depositions before any of the officers authorized to take such depositions 'or for the master in chancery in the hearing of a cause referred to him. Unless documents that are introduced and made a part of depositions or that may be submitted before a master in the hearing of a cause under the order of the court can be charged at the rate of fifteen cents per hundred words, then there is no provision whatever in the statute for the allowance of any fees or compensation to such officer for services of this character. It is a matter of common knowledge that in many chancery cases which are referred to masters to take and report the testimony, by far the larger portion of the evidence is documentary. It cannot be supposed that the legislature intended that these services should be rendered gratuitously. There was no error in allowing the master fifteen cents per hundred words for the documentary evidence that was offered by the parties.

*Fourth*—Appellants' fourth contention is, that the evidence was insufficient to support the decree. Under this point the contention is made that the evidence was insufficient to justify the court in adjudging the costs against appellants. This point has had our consideration, and what we have said in the second division of this opinion sufficiently disposes of the point.

Finding no error in the record the decree of the superior court of Cook county is affirmed. *Decree affirmed.*