(No. 30171.—
CHARLES WESTERHOLD *et al.*, Appellants, *vs.* WALTER A.
HALE *et al.*, Commissioners of Wood River Drainage
and Levee District, Appellees.

*Opinion filed September 18, 1947.*

568

O'NEILL & DAVEY, of Alton, and LELAND H. BUCKLEY, of Edwardsville, for appellants.

KARL K. HOAGLAND, of Alton, and C. W. BURTON, of Edwardsville, (ROBERT B. MAUCKER, and KENNETH F. KELLY, both of Alton, of counsel,) for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Wood River Drainage and Levee District is a corporation organized several years ago under the Levee Act. (Ill. Rev. Stat. 1945, chap. 42, par. 1 *et seq.*) Its territorial area is located along the Illinois bank of the Mississippi river south of Alton. A stream known as Wood river flows across it in a southwesterly direction and has its outlet in the Mississippi. A comparatively small stream, known as Indian creek, parallels the bluffs east of the dis-

trict and flows in a southerly direction into Cahokia creek. A channel known as Cahokia Diversion channel extends from the Mississippi river to Cahokia creek and was constructed to divert the waters of Cahokia creek and its tributary, Indian creek, direct to the Mississippi. Within the watershed of these several streams are various cities and villages including East Alton, Wood River, Roxanna, Hartford, Wanda, and others. Large industries are located within the area. The land is devoted to industrial and agricultural purposes. The area included in the foregoing general description was not all within the district as originally organized. The purpose of this proceeding, which was instituted under section 58 of the Levee Act, (Ill. Rev. Stat. 1945, chap. 42, par. 56,) was to bring into the district additional territory and, if the proceeding is sustained, there would be brought into the district substantially all the lands that lie in the area referred to.

For many years the district has maintained levees along the Illinois bank of the Mississippi and both banks of Wood river, but it never installed any pumping plants. The land within the district as originally organized and that which is sought to be added by this proceeding is of the same general contour. The variation in elevation above sea level is from a minimum of 420 feet to a maximum of 440.

The Federal government, acting through the War Department as its agent, has for many years kept flood records showing the crest of floods on the Mississippi river. The records so kept show that in 1844 the Mississippi reached a crest which has never been equalled. The nearest approach to the crest of that flood were the floods of 1943 and 1944. The flood crests of the years mentioned serve in this case as presenting the possibility against which protection from flood waters should be furnished.

Many years ago the Federal government, through congressional enactments, adopted a policy of aiding in the

control of floods along the Mississippi and other rivers. From time to time the government action in this matter has been extended whereby the government, under the policy of aiding agriculture and protecting navigation, extended its authority over the control of floods. The act pertinent to this case is the act of June 28, 1938. (Title 33, chapter 15, section 701 *et seq.*) The War Department, under the authority of said act, undertook a program of flood control that affected this particular area. The overall project of which this was a part extended from Alton south to Gale, Illinois, a distance of approximately 150 miles.

The War Department approved the district's application for assistance in increasing the height and strength of its levees. A contract was tentatively entered into in reference to the construction and maintenance of such levees and such other matters as were made necessary by such work. The obligation imposed on the district by the contract was that it would (a) provide without cost to the United States, all lands, easements and rights of way necessary for the construction of the project; (b) hold and save the United States free from damages due to the construction works, and (c) maintain and operate all the works after completion in accordance with regulations to be prescribed by the Secretary of War. It was specified in the contract that it was understood that the proposed work contemplated the reconstruction and enlargement of existing levees along Wood river to approved grade and standard cross sections, with relocations and extensions where necessary and the construction of new levees along the Mississippi river, Cahokia Diversion channel and Indian creek, and such other related works as might be necessary to the extent authorized by the Federal act.

After the terms of the contract had been tentatively agreed upon, a petition was filed in the county court on behalf of the district pursuant to the statute (Ill. Rev.

Stat. 1945, chap. 42, par. 166.2,) to obtain court authorization for the commissioners to execute the contract in conjunction with the Federal government. On October 9, 1945, after several hearings, an order was entered authorizing the commissioners to proceed on behalf of the district. No appeal was taken from that order and it became final.

Section 58 of the Levee Act specifies certain conditions on the happening of which lands not in a drainage district may be included. The statute provides for two sets of circumstances, one of which is where the owner of lands which are located outside a district drains his land into the ditches and drains of the district and the other is where the lands located outside a district are "benefited by the original work of such district or by any additional work constructed by order of court in said district." The statute provides that in either event the owner of the land is deemed to have made application for his land to be added to the area of the district. In such event commissioners are authorized to make application to the county court or a justice of the peace for the admission of such lands into the district. In this case, the commissioners of the district made application to the county court of Madison county and sought to obtain a court order bringing into the district many tracts and parcels which had hitherto been outside. The title to the premises sought to be added is held by some 6500 owners which includes the lands of these thirty-five appellants. Appellants filed objections and, after a hearing of evidence, the objections were overruled and an order entered annexing all the lands described in the petition of the commissioners to the district. This appeal followed.

The first error assigned is that the county court was without jurisdiction of the persons and of the subject matter. On the question of jurisdiction of the persons, appellants state in their brief that proper notice was not

given but they do not point to any particular part of the record that is inconsistent with the court's finding which was incorporated into the order that due and sufficient notice of the proceedings had been given in conformity with the statute to all persons interested.

Section 58 prescribes the notice to be given and directs that an affidavit of service filed in the cause shall be evidence thereof. An affidavit was filed in this case which sets forth some of the steps taken in regard to the giving of notice to the parties interested but, even though it does not show a compliance with the statute, this does not necessarily make the court's order subject to attack on the ground of lack of jurisdiction of the persons. In *Stokes* v. *Bay Bottoms Drainage Dist.* 278 Ill. 390, a statute with requirements for notice similar to section 58 was under consideration and it was held that the contents of the affidavit were not conclusive on jurisdictional facts, that the court had the power to hear oral testimony in addition to the affidavit, and that in the absence of a bill of exceptions it would be presumed that the order of the court finding that it had jurisdiction of the person was sustained by such evidence. It has been said that the recital in a decree or order of a county court in drainage matters that it has jurisdiction of the persons is *prima facie* evidence that the notices required by law had been given and that in the absence of inconsistencies with such recital, it would be held that the court had jurisdiction. *Okaw Valley Outlet Drainage Dist.* v. *Springman,* 345 Ill. 400; *People ex rel. Fitton* v. *Ehler,* 338 Ill. 67; *People ex rel. Williams* v. *Darst,* 285 Ill. 533.

Appellants also contend that the court was without jurisdiction for the reason that the record did not disclose that there were no nonresident owners of lands sought to be annexed. It is not claimed that any of appellants are nonresidents of the State. It is well settled that a party can only complain of those errors which affect his own

interest. (*Donham* v. *Joyce*, 257 Ill. 112; *Short* v. *Raub*, 81 Ill. 509.) The contention that the court did not have jurisdiction of the persons is without merit.

The challenge to the court's jurisdiction of the subject matter is founded on the claim that the complaint filed by the commissioners under section 58 was insufficient in substance to confer jurisdiction. It is urged that the levees to be constructed under the Federal program are not definitely located either by allegations of the complaint or the evidence, and that, therefore, the complaint does not come within the purview of section 58.

It is alleged in the complaint that the work in which the Federal government is to participate consists of river front levees extending from high ground in Alton to the north bank of the Cahokia Diversion channel, the same to be of the approximate altitude of 441 feet above sea level with flank levees of rising grades along both sides of Wood river from the Mississippi to the high ground to the east and along the northeast side of Cahokia Diversion channel and Indian creek from the Mississippi to the high ground near the bluffs. It is further alleged that such levees are "to protect the lands now within the Wood River Drainage and Levee District and additional lands from the flood water of the Wood river, Indian creek and the Mississippi river, as more fully set out and referred to in said order of October 9, 1945." (Said order was the one entered authorizing the commissioners to join in the contract with the War Department in reference to such project.) The evidence of the engineers who were in the employ of the War Department and had charge of the preparation of the plans and specifications to be followed in the construction of the levees testified in reference to the authenticity of certain maps introduced in evidence. They stated that where there was to be a relocation of levees or the construction of new levees, the same would be located in substantially the place indicated by the maps.

The exact termini of the levees are not fixed either in the petition or the evidence, but there are sufficient facts to apprize the owners of the property sought to be annexed of the effect that the completion of the project would have on their lands.

The court's power to act in a proceeding under section 58 is limited to the purposes specified in the act. It provides a means whereby lands that are not within a drainage district but which will receive benefits from the work of the district may be annexed to and made a part of it. It is purely an annexation proceeding, and, as was held in *People ex rel. King* v. *North Fork Outlet Drainage Dist.* 331 Ill. 68, it cannot be construed as authorizing action which would enlarge the district and extend its work beyond what would be required to carry out the purposes of the district as originally constituted.

The Levee Act under which the district was organized authorized the creation of drainage districts and construction of levees across the lands of others for the purpose of benefiting agricultural lands, the sanitary conditions of the district and for improving mining operations. The purposes to which the lands in this district were devoted when it was organized are the same as at present, namely, agricultural and industrial. Some of the witnesses testified to conditions created by the floods of 1943 and 1944 and related the effect that the floods had on the operation of the sanitary sewers of some of the cities and villages within the district. Such evidence shows that high floods interfered with the proper operation of such sewers in some of the localities. Although the evidence on this point is meager, it will, in the absence of counterevidence, be taken as· sufficient to show that the purpose for which the improvement is to be made is the same as the purpose for which the district was organized, *i.e.,* for the betterment of agricultural and sanitary conditions.

Appellants contend that the substance of an amendment added to the complaint after the proceeding had been started illustrates the indefiniteness and uncertainty that surrounds the completion of the project. The amendment undertook to add to the allegations of the complaint as to the character of the work to be done. It was stated in the amendment that the work was to also include the installation of pumping stations along the river fronts of the rivers on the banks of which the levees were to be constructed. It stated that the number and location of said pumping stations was to be determined at the time of the construction of the several levees. No locations for pumping stations are noted on any of the several maps introduced in evidence and the testimony of the engineers of the War Department is as indefinite on such matter as the allegation in the amendment.

The lands sought to be annexed by this proceeding are brought in under the general allegation that they will be benefited by works of the district constructed under the order of the court. The only issue raised under such an allegation is as to whether the lands sought to be annexed will be benefited by the proposed improvement. As will be pointed out in the discussions of another part of this opinion, there is evidence to apprize the landowners of the character of the improvement and the effect that its construction and operation will have upon their lands. We find this to be true even though it shall be later determined that the district does not need any pumping plants. The court had jurisdiction of the persons and of the subject matter.

It was estimated that the levees and other works proposed to be constructed would cost $5,750,000. According to the allegations of the complaint this was apportioned between the Federal government and the district, the latter to bear $750,000 and the United States $5,000,000. A

further breakdown of the part apportioned to the district places $539,251 on the lands presently in the district and $210,749 on the tracts of land to be added. A further tentative allocation of the latter amount places $83,860 on the cities and village lots, $122,350 on the lands used for industrial purposes, railroad rights of way, streets, alleys and public highways, and the remaining $4539 on the lands devoted to agriculture. Appellants are owners of farm lands, but we do not understand that they own all the farm lands sought to be annexed.

Appellants concede that an act approved June 12, 1937, (Ill. Rev. Stat. 1945, chap. 42, pars. 166.1-166.4,) purports to authorize existing drainage districts to accept works constructed or proposed to be constructed by the United States and to comply with the conditions imposed by the Federal government in the construction of such works. The court order of October 9, 1945, authorizing the commissioners to join in a contract with the Federal agency (Secretary of War) was entered pursuant to that act. Appellants contend that such enactment violates section 31 of article IV of the constitution. The constitutional provision is that the General Assembly may pass laws permitting the owners of lands to construct drainage ditches and levees for agricultural, sanitary or mining purposes across the lands of others and provide for the organization of drainage districts and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby.

It is contended on behalf of the district that such constitutional question could have been raised in the court proceeding in which the order of October 9, 1945, was entered but since it was not raised in that hearing and that order having become final, it cannot be raised in this

proceeding. Such contention cannot be sustained. Appellants' lands were not in the district at the time the order of October 9, 1945, was entered, and they were not, by reason of ownership of such lands, parties to that proceeding and they do not stand in privity to anyone that was a party. Furthermore, the district bases its right to annex the lands on the fact that they are to be benefited by the work to be done under the contract with the government. It is obvious that if the statute under which the contract was entered into is unconstitutional, then the contract is invalid, the project could not be carried out, and the whole proposition falls. Since this is appellants' first opportunity to raise the constitutional question, and since the contention, if sustained, affects the validity of this proceeding, we find that they had the right to raise the question in this case and to have it considered on this appeal.

Appellants contend that since the constitutional provision restricted the power of the General Assembly to the adoption of laws which permit owners of land to construct drains, ditches and levees for agricultural, sanitary and mining purposes, the act of June 12, 1937, (par. 166.1 *et seq.*) transcends that authority and authorized the district to engage in a Federal project promoted solely for the improvement of navigation on the Mississippi river. Such contention overlooks the fact that the Federal act is not limited in its purpose to the promotion of projects that aid navigation on navigable streams. Section 701a of the Federal act contains a declaration of policy which is that it is "recognized that destructive floods upon the rivers of the United States, upsetting orderly processes and causing loss of life and property, including the erosion of lands, and impairing and obstructing navigation, highways, railroads, and other channels of commerce between the states, constitute a menace to national welfare; that it is the sense of Congress that flood control on navigable waters or their tributaries is a proper activity of the Fed-

eral government in co-operation with states, their political subdivisions, and localities thereof; that investigations and improvements of rivers and other waterways, including watersheds thereof, for flood control purposes are in the interest of the general welfare; that the Federal government should improve or participate in the improvement of navigable waters or their tributaries, including watersheds thereof, for flood control purposes if the benefits to whomsoever they may accrue are in excess of the estimated costs, and if the lives and social security of people are otherwise adversely affected." Section 701a-1 defines the words "flood control" to include channel and major drainage improvements, Federal investigations and improvements of rivers and other waterways, for flood control and directs that it and allied purposes shall be under the jurisdiction of and prosecuted by the War Department under the direction of the Secretary of War and supervision of the chief of engineers. It further provides that Federal investigation of watersheds and measures for run-off and waterflow retardation, soil-erosion prevention on watersheds should be under the jurisdiction of and prosecuted by the Department of Agriculture under the direction of the Secretary of Agriculture. Other sections co-ordinate the powers and make provision for the exercise of such powers by each of the department heads in their respective fields.

Section 701c provides that after June 22, 1936, no money appropriated under the authority of the act should be expended on the construction of any project until States, political subdivisions thereof or other responsible local agencies have given assurances satisfactory to the Secretary of War, that such agency will undertake the obligations which were set forth in the contract as heretofore referred to.

An analysis of the foregoing sections and others of the act shows conclusively that the purpose of the Federal act is to aid navigation and provide a means for flood

control and that within the control of floods there is involved the improvement of agricultural and sanitary conditions. The purposes included in the Federal Act are within the scope of the purpose for which the General Assembly may provide under the constitutional provision.

In presenting their claims on the constitutional question, appellants cite and rely upon *Updike* v. *Wright,* 81 Ill. 49. The applicability of anything said in that opinion to support their contention may be questioned, but, since that decision was rendered, section 31 of article IV of the constitution has been amended to obviate the objection which was held fatal in the *Updike case. Blake* v. *People,* 109 Ill. 504; *Owners of Lands* v. *People ex rel. Stookey,* 113 Ill. 296.

Appellants further contend that constitutional provisions prohibited the General Assembly from enacting the act of June 12, 1937, (par. 166.1 *et seq.*) for the reason that such statute provides a means whereby a court may authorize commissioners of a drainage district to abdicate their powers in the management and operation of the district to the Secretary of War. Such contention is directed at a provision in section 2 of the act and to the contractual provision which requires the district to maintain and operate the works in accordance with the regulations prescribed by the Secretary of War.

Section 2 of the act of June 12, 1937, provides for a court proceeding whereby drainage and levee districts already organized may be authorized by court order "to accept drainage works, or drainage works and levees constructed or proposed to be constructed by the United States and in connection therewith, to contract to furnish without cost to the United States, all lands, easements and rights of way necessary for the construction of such works and levees, to enter into agreements to hold and save the United States free from all damages and liability arising from the construction of such works or levees, and to

maintain and operate all such works and levees after completion thereof in accordance with such regulations as may be prescribed by the Secretary of War or any other proper officer, department or agency of the United States, and to do and perform all other acts and things as may be required by any act of Congress authorizing the construction of such works or levees," etc. It further provides that such contracts are to be entered into with the approval of the county court of the county in which the district was organized and, upon the entry of an order approving such action, the commissioners of the district may, in behalf of the district, accept such works and levees and enter into such contracts and assume such obligations and liabilities.

It will be noted that the statutory provision in reference to the acceptance of works subject to the right of the Secretary of War to prescribe the rules and regulations in respect to the maintenance and operation of the works is general. It is conceivable that such rules. and regulations might accord with the powers and duties of the commissioners and in such event there would be no prohibition against authorizing the acceptance of the works subject to such regulations. The record does not disclose that the Secretary of War has prescribed any rules or regulations which would control the management and operation of this district when the work is completed. The fact that the statute makes such provision does not render it unconstitutional. It is possible that a Federal agency could promulgate rules and regulations for the management and operation of a drainage district that, if accepted by the district, would violate settled propositions of law, but that question cannot be determined in this proceeding.

Appellants also assert that the order of October 9, 1945, containing the provision in reference to the maintenance and operation of the district by the commissioners being subject to the rules and regulations prescribed by the Sec-

retary of War, renders the contract and the order entered thereon void. What has been said in reference to the statute applies with equal force to the contract and the order of October 9, 1945. Appellants' contentions in reference to the constitutional questions are without merit.

Appellants' final contention presents a question of fact as to whether their respective tracts will be benefited by the work authorized by the order of October 9, 1945. It must be remembered that the scope of this inquiry is limited to the issues that can be raised under section 58, that is, as to whether particular lands sought to be annexed will be benefited by the works. All questions as to the amount of such benefits, or the amount for which any particular tract of land might be assessed, are not involved.

Appellants' lands are not contiguous, nor can it be said that they are all located in one general area. The evidence shows that the flood waters of one stream may have an effect on that particular tract of land that is not common to the other tracts. There is evidence that during the floods of 1943 and 1944 some of the tracts were overflowed in part but there is no evidence that any tract was completely inundated. The evidence indicates that some of the farm lands involved were isolated during such floods, but such isolation did not extend for any period of time.

In the main, the evidence of appellants was introduced to refute the commissioners' theory, and that of the War Department, that all levees constructed under this program should be made with a view of meeting a flood equal to the one of 1844. Appellants say that the flood of that year is a myth and furnishes no substantial basis against which the levees should be constructed. The facts are taken from the records of an agency of the Federal government and must, after such lapse of time, be taken as conclusive that the flood of that year reached the crest shown by those records. It is said that the long lapse of time without the recurrence of a similar flood demonstrates

the improbability that there will be a recurrence. Whether such possibility exists is a question for the department of government charged with construction of works to control floods.

There is no question but what the general area of the district would be affected to some degree by the flood waters coming from the Illinois river into the Mississippi a short distance above Alton, and the flood waters from the Missouri river entering the Mississippi near the outlet of the Cahokia Diversion channel.

The elevation of the several tracts above sea level is shown by the evidence and, by the same measure, the crests of the flood of 1844 and those of 1943 and 1944 are proven. If the crests of the floods of any of those years should recur, it is clear that it would have some effect on all the lands that had an elevation above sea level equal to or less than the high-water mark of those floods.

It is common knowledge that in 1844 the bottoms of the streams that flow through or along the side of this State were not leveed, ditched or drained as at present, that the flood waters were permitted to spread across large areas that are now reclaimed and under cultivation. The result of a flood like that of 1844, under present conditions, would be to raise the height of the crest above the one established in that year. The engineers of the War Department testified that in determining the height of the levees in the proposed work due allowance has been made for such condition.

The order of the county court applied to all the lands sought to be annexed and no specific reference was made to appellants' lands. The order contains a general finding which, as applied to appellants' lands, is supported by the evidence. Such finding is that the floods rendered the lands less fit for agricultural purposes, that the flood waters interfered with normal travel and caused the market value of lands to lessen and depreciate. Appellants' contentions

fail completely when studied against the background of factual data of past floods.

Appellants contend that the order appealed from is vague, indefinite and uncertain and will be difficult of application when the time comes for the extension of special assessments against the lands that are added to the district by said order. We do not find that the order is subject to the criticism directed against it, and see no reason why it is not sufficient to furnish all the information that is necessary to any further procedure that may arise after the lands are in the district.

The order of the county court was correct and is affirmed.

*Order affirmed.*