*In re* LAWRENCE COUNTY CONSOLIDATED DRAINAGE DISTRICT (Lawrence County Consolidated Drainage District, Petitioner-Appellee, v. George C. Lackey *et al.*, Objectors-Appellants).

Fifth District   No. 5—86—0090

Opinion filed June 1, 1987.

George C. Lackey, of Lackey & Warner, P.C., of Centralia, for appellants.

Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign (Mary A. Perlstein, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

The commissioners of the Lawrence County Consolidated Drainage District (District) brought this action by filing a petition in which they sought court approval to annex 13,315 acres of land into the District and sought authority to levy an annual maintenance assessment against the lands sought to be annexed. Written objections to the District's petition were filed by George C. Lackey and John D. Lackey, as trustees of the Lackey Farm Trust. After a hearing, the trial court entered an order granting the District's petition for annexation. The Lackeys, along with other objectors who did not file written objections at or prior to the hearing on the District's petition, have appealed from this order, contending (1) that the District's petition to annex was insufficient at law; (2) that the trial court's order annexing the lands was not supported by the evidence; and (3) that the post-trial motions of the objectors not filing written objections were improperly stricken. We reverse in part and affirm in part.

The District, containing approximately 37,000 acres of land, was created through the consolidation of five previously separate drainage districts located in Lawrence County, Illinois, by order of the trial

court entered on January 31, 1985. On August 29, 1985, the District filed a petition to annex 13,315 acres of land and to levy an annual maintenance assessment against the lands sought to be annexed. The petition contained descriptions of the lands and names of the owners of the lands sought to be annexed. Paragraph 6 of the petition stated:

"That said lands encompass an area of approximately 13,315 acres in Lawrence and Crawford Counties and are adjacent to the lands within the boundaries of the district and are drained in the natural course of drainage into the drainage system of the district and have been, and will be, benefited or protected by additional or annual maintenance work performed by the Lawrence County Consolidated Drainage District in the County of Lawrence and State of Illinois."

Paragraph 8 of the petition described the annual maintenance work to be performed as follows:

"That the drainage system of the district is presently in need of repair and maintenance and the necessity for performing the repair and maintenance work will recur annually; such work will consist primarily of spot dredging and removal of bars and silt that have built up in the open ditches, removal of brush and debris in and along the open ditches, repair and replacement of damaged and broken drainage structures and tiles and payment of annual administrative and overhead expenses; in addition, the Commissioners plan to install pumping stations which will require funds for annual operations and maintenance."

Prior to hearing on the District's petition on October 17, 1985, the Lackeys, as trustees of the Lackey Farm Trust, filed written objections to the District's petition. At the hearing George C. Lackey appeared on behalf of the Lackey Farm Trust, and certain other landowners appeared *pro se* in opposition to the petition but filed no written objections. Other landowners appeared *pro se* in favor of the District's petition. None of the landowners except the Lackeys presented any evidence at the hearing.

At the hearing the District's petition was offered and admitted into evidence by the court as a *prima facie* case. The Lackeys moved for a finding dismissing the petition on the grounds that insufficient evidence had been presented. The court then permitted the District to reopen its case to present testimony in support of the District's petition.

Dewey Connor, a civil engineer employed by the District, testified that he had prepared a map showing the existing District and any areas that drain into the District that were not previously included

within the separate districts that form the consolidated District. He stated that all of the lands sought to be annexed were within the same watershed as the lands already in the District and were of a higher elevation than those lands. He further stated that the lands sought to be annexed would be benefited by the cleaning out and deepening of the lower ditches in the District and that this proposed work would allow the ditches to accept water from the higher elevations faster and to get rid of it faster. He reiterated that the proposed maintenance work would benefit the lands sought to be annexed in that it "would get rid of the water."

When asked on cross-examination whether the sole basis of his opinion that the lands would be benefited was that the water would move out of the District faster, Mr. Connor replied:

"I'm not sure how—at what speed *** —or even if the water gets out of this annexed land *** I don't think necessarily faster. I think that would help, but I think getting it out—getting it out, period, would be the big thing."

Mr. Connor testified further that the elevation of the Lackey lands and surrounding tracts was generally higher than that of the lower-lying lands in the existing District. The highest elevation in section 36, where the Lackey lands were located, was 485 feet above sea level. The Lackey lands extended from a high point on the north near the 485-foot elevation to a 451-foot elevation three-fourths of a mile south. The lowest elevation in the existing District, found at the end of the District drains some 20 miles from the Lackey lands, was approximately 410 feet, while the elevation of District lands adjoining section 36 ranged from 464 to 451 feet. Elevations of other lands to be annexed in the immediate vicinity of the 485-foot elevation on section 36 were 20 to 30 feet lower.

Mr. Connor stated that the Lackey lands were connected to the present District system by a man-made ditch that flowed south and west into Sugar Creek, which then carried the water one-fourth to one-half mile south to the present District system. He was of the opinion that it would be beneficial to those lands that drain into Sugar Creek to have maintenance work performed on the District drainage system because cleaning out the ditches below would speed up or expedite the natural flow of water down Sugar Creek through the District and ultimately to the river.

On re-cross-examination Mr. Connor testified that there was a 10- to 15-foot drop from the corner of the Lackey lands to the point where Sugar Creek flows into the District lands. He testified that Sugar Creek would have to rise to 15 feet above flood level before the

Lackey lands would be flooded.

Chuck Daugherty, one of the commissioners for the District, was called as a witness by the Lackeys. When asked whether he had any information about the lands sought to be annexed in addition to that set forth by Mr. Connor, he stated that there was:

> "a lot of land in that section [apparently referring to section 36] that's lower and has water on it that if they was [sic] cleaned out down Sugar Creek or even below on our original district, it would help 'youins' [sic] out."

On redirect-examination Mr. Daugherty agreed that Sugar Creek would have to rise to between 10 and 15 feet above flood stage before it would "back up" onto the lower part of the Lackey ground. Daugherty added that "it [Sugar Creek] doesn't [rise that high]. It goes over the road just west of the Lackey property." Mr. Daugherty testified that the work proposed would benefit the Lackey ground by getting the water out faster and also by keeping the water from being "held up north two or three days longer."

John Benson, another of the District's commissioners, was also called by the Lackeys to testify regarding benefits that would be derived by annexation of the subject lands to the District. Mr. Benson stated that he farmed some land in section 26 northwest of the Lackey lands and that "it would speed up the water flow out of the proposed annexed lands if we had [the ditches] cleaned out below." He explained that some of the fields are tiled into a natural ditch that flows into the District system and that "[the tiles] would work a lot better if the ditches were opened up below."

Following arguments of counsel the trial court found that there had been no substantial evidence presented that would rebut the *prima facie* case made by the District's petition and the witnesses' testimony. With respect to the Lackey lands, the court observed that, while these lands were fairly high upstream and might not be benefited as much as some of the other lands, the testimony of the engineer and the commissioners had established that the Lackey lands would be benefited by annexation to the District. The court held, therefore, that the allegations of the District's petition had been proved and granted the prayer of the petition so far as annexation of the lands was concerned.

Subsequently, the Lackeys and other landowners, some of whom had appeared at the hearing on the District's petition, filed post-trial motions praying that the court reconsider and set aside its order annexing lands. Following a hearing on January 16, 1986, the court entered an order striking the post-trial motions of the objectors other

than the Lackeys for failure to file written objections at or prior to the hearing on the petition. The court additionally denied the post-trial motion of the Lackeys and ruled that the order annexing lands to the District should remain in full force and effect.

■ The Lackeys and those objectors who had filed post-trial motions subsequently filed this appeal from the court's order of annexation. On appeal they contend initially that the District's petition to annex was insufficient at law because it failed to comply with the statutory requirements of such a petition. In particular, the appellants assert, the petition did not comply with the requirements of a petition to annex in that it did not contain a general description of the connection that had been made or the manner in which the lands sought to be annexed had been or would be benefited or protected by inclusion in the District.

Section 8—3 of the Illinois Drainage Code (Ill. Rev. Stat. 1985, ch. 42, par. 8—3), which establishes the requirements of a petition to annex lands into a drainage district, provides:

> "When any land lying outside a district has been connected to a district drain or has been or will be benefited or protected by any district work done or ordered to be done, the commissioners may petition the court to annex such land to the district. *The petition shall include a description of the land proposed to be annexed, the name of the owner, when known, and a general description of the connection which has been made or a general description of the manner in which the land has been or will be benefited or protected.*" (Emphasis added.)

As the District observes in response to the appellants' contention regarding the sufficiency of its petition, the statute does not require a detailed description of the connection made or the benefits to be derived from annexation of lands to an existing drainage system. In *People ex rel. Williams v. Darst* (1914), 265 Ill. 354, 359, 106 N.E. 936, 938, a case involving the sufficiency of a petition to organize and establish a drainage district, the court stated:

> "What the statute contemplates is that the petition shall describe the proposed improvement with sufficient definiteness to inform the land owners who are to be specially assessed to pay for its cost what is proposed to be done, so as to enable them to judge as to the necessity and propriety of the work proposed and of the advantages and disadvantages that will result from the construction of the proposed improvement."

In *Westerhold v. Hale* (1947), 397 Ill. 567, 75 N.E.2d 27, a case which, like the instant case, involved the sufficiency of a petition to

annex lands, albeit under section 58 of the former levee act (Ill. Rev. Stat. 1945, ch. 42, par. 58), the court considered whether the commissioners' petition sufficiently alleged the benefit that would be afforded the lands sought to be annexed. The court observed that the lands sought to be annexed by the proceeding were "brought in under the general allegation that they [would] be benefited by works of the district constructed under the order of the court." (*Westerhold v. Hale* (1947), 397 Ill. 567, 575, 75 N.E.2d 27, 32.) The court, noting that there was evidence adduced at the hearing to "apprize the landowners of the character of the improvement and the effect that its construction and operation [would] have upon their lands[,]" found this allegation to be sufficient to raise the issue of whether the lands sought to be annexed would be benefited by the proposed improvement and held that the petition was sufficient to give the trial court jurisdiction of the subject matter of the case.

In the instant case, the District's petition stated in paragraph 6 that the lands sought to be annexed "are drained in the natural course of drainage into the drainage system of the district and have been, and will be, benefited or protected by additional or annual maintenance work performed by the *** District." Paragraph 8 described the annual maintenance work to be performed by the District. When read together, paragraphs 6 and 8 show that the way the lands have been or will be benefited or protected is by the maintenance and improvement of the District system into which the lands are drained in the natural course of drainage. Since these allegations informed the owners of the lands to be annexed of the annual maintenance work proposed by the District that would benefit or protect their lands, we believe the petition was sufficient, under the rules of *Darst* and *Westerhold*, to give a general description of the manner in which the lands would be benefited. We, therefore, reject the appellants' contention that the District's petition was insufficient at law and hold that the petition adequately complied with the statute so as to vest the trial court with jurisdiction to proceed on the District's petition.

■ The appellants next contend that the evidence presented by the District's petition and testimony of witnesses was insufficient to support the trial court's order granting the petition to annex. The appellants assert that the District failed to sustain its burden of showing that the lands sought to be annexed either (1) had been connected to a district drain or (2) had been or would be benefited or protected by any district work done or ordered to be done. See Ill. Rev. Stat. 1985, ch. 42, par. 8—6.

Our consideration of the sufficiency of the evidence to sustain the

trial court's order of annexation is necessarily limited by the record before us on review. As mentioned earlier in this opinion, none of the landowners except the Lackeys filed written objections to the District's petition or presented any evidence at the hearing on the District's petition. For this reason much of the evidence regarding the effect of the work proposed in the District's petition relates specifically to the Lackey lands located in section 36. We will, therefore, deal with these lands separately in considering whether the District made a sufficient showing to sustain the court's order of annexation.

The District offered no evidence that the Lackey lands in question were connected directly to the District through an artificial ditch as required to establish such a connection. (See *People ex rel. Wilcox v. Barber* (1914), 265 Ill. 316, 106 N.E. 798.) Rather, the District presented evidence, and the trial court found, that the lands should be annexed on the ground that they would be benefited or protected by the maintenance work of the District.

While the District presented its petition and testimony of witnesses to make a *prima facie* case of benefit, the Lackeys assert that this *prima facie* case was rebutted as to them by evidence showing that the proposed drainage work in the District would merely accelerate the flow of water from their lands, which was not a sufficient benefit to warrant annexation to the District. In particular, the Lackeys cite testimony elicited upon cross-examination of the District's witness and upon direct examination of the Lackeys' own witnesses that their lands were some 20 to 70 feet higher in elevation than lands found in the District and that there was a 10- to 15-foot drop from the corner of the Lackey lands to the point where Sugar Creek flows into the District lands. In addition they cite testimony that the water in Sugar Creek did not rise high enough to overflow onto the Lackey lands. In view of this testimony, the Lackeys maintain that the trial court incorrectly based its order of annexation on the fact that the work proposed by the District would increase the natural flow of water from the Lackey lands into District drains.

It is settled that in order to show that lands lying outside a drainage district are sufficiently benefited by drainage work of the district to justify annexation to the district, something more than mere acceleration of the natural flow of water from the lands to the District drains is needed. As stated in *Commissioners of Sangamon & Drummer Drainage District v. Houston* (1918), 284 Ill. 406, 409, 120 N.E. 253, 254:

> "The mere fact that the flow of water in a natural watercourse into which *** drains [on lands to be annexed] empty

has been accelerated is not sufficient proof of benefits to the lands drained *** to warrant the annexation of such lands to a drainage district."

The *Sangamon* court observed that it is not enough, in considering what lands should be included in a drainage district, that the lands are in the same watershed. (See *People ex rel. Mann v. Allen* (1928), 330 Ill. 433, 161 N.E. 867.) Rather, there is imposed upon the owner of lower-lying lands the natural burden of disposing of waters flowing onto his lands, and the owner of the dominant or higher-lying lands is entitled to enjoy the natural advantages of his situation. (*People ex rel. Mann v. Allen* (1928), 330 Ill. 433, 161 N.E. 867.) Thus, in order for such higher-lying lands to be annexed to a drainage district so as to be assessed for the work done in the district:

"[the] lands must be thereby rendered more productive, more accessible, or their market value substantially increased and their actual or intrinsic value enhanced." *People ex rel. Mann v. Allen* (1928), 330 Ill. 433, 442, 161 N.E. 867, 870.

In the instant case the testimony of the witnesses indicated that the elevation of the Lackey lands was 10 to 15 feet higher than the point where Sugar Creek entered the District lands and that Sugar Creek would have to rise 10 to 15 feet above flood level before water would be backed up from Sugar Creek onto the Lackey lands. Commissioner Daugherty testified that Sugar Creek does not rise that high but, rather, "goes over the road just west of the Lackey property." In view of this testimony that the Lackey lands were not subject to flooding from Sugar Creek that would be alleviated by cleaning out that portion of Sugar Creek running through District lands, it does not appear that the Lackey lands would be benefited by the work proposed by the District so as to justify the annexation of the Lackey lands into the District. While the proposed work would, undoubtedly, accelerate the natural drainage of water from the Lackey lands into Sugar Creek and on into other District ditches, such an acceleration of natural drainage is not a sufficient benefit under the rules governing annexation of lands into an existing drainage district to justify annexation of the Lackey lands. For this reason, we find that the Lackeys successfully rebutted the *prima facie* case of benefit presented by the District's petition and testimony of witnesses and hold that the trial court's finding of benefit to the Lackey lands was contrary to the manifest weight of the evidence. We, therefore, reverse its order of annexation as to the Lackey lands at issue.

■ Regarding the lands of the other appellants who have joined with the Lackeys on appeal, we find no basis in the record upon

which to reverse the trial court's order of annexation. The District here, by the introduction of its verified petition into evidence (see Ill. Rev. Stat. 1985, ch. 42, par. 4—34) and the testimony of witnesses, made a *prima facie* case that the lands to be annexed had been or would be benefited by the work proposed by the District. While there was testimony that the lands in sections around section 36 were generally higher in elevation than the lower-lying lands in the District, there was no evidence presented by the other appellants as to the effect of the District's proposed work on their specific lands. Instead, reference was made generally during the course of the testimony that some of lands to be annexed were subject to overflow from Sugar Creek and that the proposed work would keep water from being held "up north" for two or three days longer than would be the case otherwise. Mr. Connor, the District's engineer, testified that the proposed work would benefit the lands in question, not by getting the water out faster, but by "getting it out, period."

From a map of the lands in question included in the record on appeal, it appears that the lands of the appellants other than the Lackeys lie in scattered locations throughout the area of the lands to be annexed. Because these appellants introduced no evidence regarding their specific lands, we cannot say whether or not the general evidence regarding the benefit from the proposed work would or would not apply to these specific lands. While the District had the burden of proving that the lands to be annexed would be benefited thereby (see *Commissioners of Pigeon Creek Drainage District v. Frank* (1946), 392 Ill. 572, 65 N.E.2d 355; *Commissioners of Inlet Swamp Drainage District v. Cooper* (1916), 274 Ill. 77, 113 N.E. 93), in the absence of evidence rebutting the District's *prima facie* case as to these particular parcels of land, we cannot say that the trial court's finding of benefit was erroneous. For this reason, we affirm the trial court's order of annexation as to the appellants other than the Lackeys.

■ On this same basis we find that those objectors who did not file written objections to the District's petition at or prior to the hearing on the petition were precluded by the court's order of annexation and that the trial court did not err in striking the post-trial motions filed by such objectors. Section 8—6 of the Illinois Drainage Code specifically provides that owners of lands sought to be annexed may file written objections to a petition to annex and that, "*after filing such objections*[,] may be heard with reference thereto and introduce evidence thereon." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 42, par. 8—6.) The District's verified petition here, upon being introduced into evidence, made a *prima facie* case for the District (see Ill. Rev. Stat.

1985, ch. 42, par. 4—34), except as to those persons filing written objections and presenting evidence in opposition to the petition. Since the objectors other than the Lackeys did not file written objections at or prior to the hearing or present evidence in opposition to the District's petition, they may not come in after the hearing and file post-trial motions regarding objections that should have been made at or prior to the time of the hearing. The trial court thus properly struck the post-trial motions filed by such objectors, and we affirm its ruling in this regard.

For the reasons stated in this opinion, we affirm the trial court's order of annexation as to the appellants other than the Lackeys and reverse its order of annexation as to the Lackeys.

Affirmed in part, reversed in part.

KARNS, P.J.,[1] and HARRISON, J., concur.

---

[1]Justice Karns replaces Justice Jones, who retired after the cause was taken under advisement.